## DRUMM-FLATO COMMISSION COMPANY v. ZEB F. CRIDER COMMISSION COMPANY, Appellant.

### Division One, November 19, 1901.

1. **Sales: DELIVERY: SHIPMENTS: CONSIGNEE LIABLE: WAIVER.** Cattle were bought from one Russell for future delivery in the Indian Territory, and the contract of purchase acknowledged part payment and the purchaser agreed "to pay the balance of the purchase money of said cattle upon delivery," and it was agreed that the purchaser was to be allowed eight per cent interest on the money advanced from date of contract to delivery. The money advanced by the purchaser was obtained from the defendant, to which he gave his notes secured by a chattel mortgage. After about two-thirds of the cattle had been shipped to defendant, and as the last train load was about being shipped, in which there were 166 cattle which had not been paid for by the advanced payments and 143 that had, upon a settlement being demanded by Russell, it was arranged between him and the purchaser that they would go together with the load to the place of consignment, and as soon as they arrived there the balance of the purchase money should be paid, but on their arrival and before sale he again demanded payment of both the purchaser and the holder of the chattel mortgage, but both beguiled him by their promises into inaction until the cattle were sold, and then both refused payment. Thereupon the contract was assigned to plaintiff, who sues not the purchaser, but the mortgagee, for the value of the last shipment. All parties knew that the cattle when delivered were to be

shipped to the defendant mortgagee, and defendant knew when receiving them that the balance of the purchase money had not been paid, and that they had been purchased by previous arrangement between the purchaser and itself. *Held, first*, that the court did not err in refusing to sustain a demurrer to the evidence; *second*, Russell did not waive the payment of the balance due him under the contract when the last load of cattle was shipped in the Indian Territory, the place of delivery; *third*, it was error to permit plaintiff to recover for the value of all the cattle of the last shipment, since the judgment should have been for the value at the contract price of the cattle included in that installment which had not been paid for by the advanced payments, less interest on those payments.

2. ———: ———: ———: WAIVER: INSTRUCTION: PRIMA FACIE CASE. In such case, a physical delivery of cattle at the place agreed upon is prima facie a waiver of a right to cash payment at time of delivery, but that prima facie case may be rebutted by proof that no delivery was intended, and whether or not there was a waiver is a fact to be determined  by the jury under all the circumstances shown in evidence.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED ON CONDITION.

*Lathrop, Morrow, Fox & Moore* and *Tom H. Reynolds* for appellant.

(1)   It was the duty of the court to say whether the undisputed facts amounted to a waiver of payment of balance of purchase price under the contract on delivery of the cattle. The cattle were sold for cash on delivery at Norman, Oklahoma Territory.   By unconditional delivery, without any demand being made at the time for payment, the seller waived the payment as a condition precedent.   Spring Garden Ins. Co. v. Evans, 9 Md. 1; Powell v. Powell, 23 Mo. App. 365; Freight & Cotton Press Co. v. Stanard, 44 Mo. 71; Ober v. Carson, 62 Mo. 209; Zimmerman v. Railroad, 71 Mo. 476; State ex rel.

v. Goetz, 131 Mo. 675; Candelaria v. Railroad, 27 Pac. 497; Coal & Coke Co. v. Reitz, 43 N. E. 46; Roth v. Railroad, 90 Am. Dec. 736; Todd v. Railroad, 83 Am. Dec. 679; Fuel Co. v. Danielson, 57 Fed. 915; Mims v. Lockett, 23 Ga. 237; Knox v. Fuller, 62 Pac. 131; Rice v. Appel, 82 N. W. 1001; McKee v. Bainter, 72 N. W. 1044; Benjamin on Sales, sec. 351, vol. 1, and 858, vol. 2; 28 Am. and Eng. Ency. of Law, pp. 528-9; 21 Id., pp. 482-485; 6 Id., (2 Ed.), pp. 474-5 and 484; Gowen v. Kehoe, 71 Ill. 66; Steamship Co. v. Burckhardt, 31 Gratt. 664; State v. Brewery Co., 32 Mo. App. 276; Oester v. Sitlington, 115 Mo. 247; Commission Co. v. Bank, 116 Mo. 558; Thresher Co. v. Pierce, 74 Mo. App. 684; Jordan v. Weber Moulding Co., 77 Mo. App. 572; Union Trust Co. v. Ins. Co., 79 Mo. App. 362; Moss Tie Co. v. Kreilich, 80 Mo. App. 304; Williams v. Railroad, 153 Mo. 487; Allen v. Hickam, 156 Mo. 49. (2) Instructions 3, 4, 5, 6, 7 and 9, requested by defendant and refused by the court, correctly state the law applicable to the facts of this case, and should have been given by the court if the case was submitted to the jury. The instructions given at plaintiff's request are partial, incorrect and contradictory declarations of the law, and the court erred in giving said instructions numbered 1, 2, 3, and 4. Benjamin on Sales, secs. 351 and 858; Bishop on Contracts, sec. 792; Knox v. Fuller, 62 Pac. 131; Rice v. Appel, 82 N. W. 1001; Oester v. Sitlington, 115 Mo. 247; Union Trust Co. v. Ins. Co., 79 Mo. App. 362; Williams v. Railroad Co., 153 Mo. 487.

*Botsford, Deatherage & Young* for respondent.

(1) The case of Johnson-Brinkman Company v. Central Bank, 116 Mo. 558, is an exact precedent for this case, fully sustaining the judgment of the court below on every point. (2) The cases supporting the decision of this court in Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558, are

very numerous. They are fully collected in Benjamin on Sales, 334 to 351. And the court will find a full statement of the law on this subject by that learned commentator in those sections. See also the following authorites: Armour v. Pecker, 123 Mass. 143; Hershorn v. Carney, 98 Mass. 149; Dows v. Kidder, 84 N. Y. 129; Goldsmith v. Bryant, 26 Wis. 34; Wabash El. Co. v. Bank, 23 Oh. St. 311; Matthews v. Cowen, 59 Ill. 347; Adams v. Lumber Co., 37 N. Y. Supp. 265. (3) The question of waiver in this class of cases, being usually one of intent to be determined from the accompanying acts and declarations of the parties, is generally one for the jury. 28 Am. and Eng. Ency. of Law, 535; O'Key v. Ins. Co., 29 Mo. App. 111; Erlich v. Ins. Co., 88 Mo. 249. (4) In this class of cases, where property is contracted to be delivered on the payment of the purchase price, and where the delivery is in installments, and where payments are made either in advance or on account from time to time as the deliveries are being made, the vendee obtains title to such installments as are covered by the payments made, but the vendor remains the owner of and retains the title to the last installment not paid for. Fenelon v. Hagaboom, 31 Wis. 172; Allen v. Hartfield, 76 Ill. 111; Thompson v. Conover, 32 N. J. L. 466; Hading v. Metz, 1 Tenn. Ch. Rep. 610; Russell v. Miner, 22 Wend. 659; Henderson v. Lauck, 21 Pa. St. 359; Welch v. Bell, 32 Pa. St. 12; Paul v. Reed, 52 N. H. 136; Hart v. Machine Co., 17 So. Rep. 769; E. S. T. F. Co. v. Grant, 114 N. Y. 40.

BRACE, P. J.—This is an action for money had and received, in which the plaintiff obtained judgment in the circuit court for $8,141.33, and the defendant appealed.

On the twentieth of October, 1897, J. M. Russell of Chickasha, Indian Territory, as party of the first part, and J. P. McMurray of Kansas City, as party of the second part, entered into a contract in writing whereby the said Russell

sold to the said McMurray a lot of steers, known as the Lanier cattle, upon the following terms and conditions:

"Said cattle to be weighed by said party of the first part on the hoof at H. Kirby's place on Walnut creek, in the Chickasaw Nation, Indian Territory, and to be delivered by said party of the first part to the party of the second part f. o. b. cars at either Norman, Oklahoma Territory, or Chickasha, Indian Territory, at option of party of the second part, or at any other place to be agreed upon by the parties to this contract.

"Said party of the first part agrees to commence delivery of said cattle to said party of the second part on the fifteenth day of November, 1897, and said party of the second part agrees to commence receiving said cattle on November 15, 1897, and receive all of said 1077 head before November 25, 1897.

"Said party of the first part agrees to keep said cattle in the field and feed same until delivery under this contract. Said party of the second part agrees to pay to said party of the first part as purchase money for said cattle three and one-fourth cents per pound on the hoof as shown by weights at Kirby scales, less three per cent allowance for shrinkage.

"And whereas, said party of the second part has this day paid to said party of the first part the sum of $26,925 as part purchase money of said cattle, said party of the first part agrees to pay said party of the second part interest on said sum of $26,925 from October 20, 1897, until November 15, 1897, at the rate of eight per cent per annum. Said party of the second part agrees to pay party of the first part the balance of the purchase money of said cattle upon delivery of the said cattle to said party of the second part by the said party of the first part.

"In witness whereof the parties hereto have set their hands at Chickasha, Indian Terrtory, this twentieth day of October, 1897.                    J. M. RUSSELL.

"Executed in triplicate.                    J. P. McMURRAY.

"Witnesses: CHAS. M. FEICHMEIER, G. W. BAREFOOT."

In addition to the sum of $26,925 of the purchase price for the cattle on that day paid as recited in the contract, McMurray at the same time paid the further sum of $2,000, a receipt for which was indorsed upon the contract, and thereupon Russell assigned $5,300 of the balance of the purchase money to the plaintiff, which assignment was also indorsed on the contract. The cash payments were made by drafts drawn by McMurray on the defendant at Kansas City in pursuance of an arrangement previously made between them. The next day the contract was exhibited to the defendant at Kansas City. McMurray's note for the amount of the drafts secured by a chattel mortgage was accepted by the defendant, and thereafter on the twenty-third of October, 1893, the drafts were paid by the defendant and charged on its books to the account of McMurray.

In pursuance of the contract, the cattle, numbering 1102, were delivered in the stock pens at Norman, Oklahoma Territory, weighed, and thence shipped in the name of McMurray to the defendant at Kansas City, by whom they were received and sold, and the net proceeds placed to the credit of McMurray as follows:

"November 23, sales, 381 cattle.......... $11,008.77
"November 24, sales, 360 cattle..........  10,430.29
"November 25, sales,  52 cattle..........   1,478.60
"November 27, sales, 309 cattle..........   8,141.33

"Total ...... ....................... $32,058.99"

The purchase price of the cattle, as determined by the weights, was $34,033.56, on which at the time of making the contract there had been paid the sum of $28,925 as hereinbefore stated, leaving a balance due thereon at the time of the shipment of $5,158.56. The weighing and shipping lasted several days, and was superintended by both Russell and McMurray, and as the last load of 309 head was about being shipped, upon a settlement being demanded by Russell, it was

arranged that they should both go with that load to Kansas
City, and as soon as they arrived there, the balance of the pur-
chase money should be paid. On their arrival in Kansas
City, and before the cattle were sold, Russell demanded pay-
ment of the balance of the purchase money of McMurray and
defendant, but both of them refused payment as they have ever
since continued to do. Thereupon Russell assigned his cause
of action to the plaintiff, who brings this suit.

At the close of the evidence, the court, after refusing to
instruct the jury to return a verdict for the defendant, sub-
mitted the issues on the following instructions:

"The court instructs the jury that the contract dated
October 20, 1897, between John M. Russell and J. P. McMur-
ray, for the sale of certain cattle, which contract has been read
in evidence before you, provided for a cash payment of the
purchase price on delivery of the cattle, and if you find from
the evidence that the balance of the purchase money due said
Russell from said McMurray, under said contract, after credit-
ing the payments made at the time of the execution of said
contract, has never been paid, but that a balance of said pur-
chase money still remains due and unpaid, and that defendant
sold the last installment of cattle covered by said contract that
was shipped from Indian Territory to Kansas City, then the
title to said last installment of cattle did not pass to said Mc-
Murray, but remained in said Russell up to and at the time of
the sale of said last installment of cattle by defendant, and
plaintiff as the assignee of said Russell is entitled to recover
from defendant by your verdict in this action the amount of
the proceeds of the sale by defendant of said last installment
unless you find from the evidence that Russell waived the cash
payment or consented to the giving of the mortgage, as pre-
dicated in instruction numbered 2 given at defendant's in-
stance.

"2.   The court instructs the jury that if you find from
the evidence that said Russell, at the time of the shipment to

Kansas City of the last installment of cattle sold under his said contract with McMurray, came to Kansas City, with McMurray, and with said last installment of cattle, with the understanding between said Russell and McMurray that the balance due for the cattle sold under said contract was to be paid on said Russell's arrival at Kansas City, then you will find that Russell did not waive the cash payment of the balance due on said contract, as provided by the terms thereof, unless you find from the evidence that Russell waived the cash payment as predicated in instruction numbered 2 given at defendant's instance.

"3.　The court instructs the jury that defendant was and is not an innocent purchaser of said last installment and shipment of cattle from said McMurray, without notice of the right of said Russell under his said contract with said McMurray, to cash payment for said cattle, and that defendant in respect of the right of said Russell to cash payment under said contract, stands in no better attitude or plight than did said McMurray.

"4.　The court instructs the jury that the undisputed evidence in the case shows that defendant received as the proceeds of the sale by defendant of said last installment of cattle, the sum of $8,141.33, and that plaintiff is entitled to a verdict against defendant for that sum if you find that plaintiff is entitled to recover under other instructions given you in the case."

For the defendant:

"1.　The court instructs the jury that if they believe from the evidence that Russell was told by McMurray, before or at the time he made the McMurray contract for the 1077 head of cattle read in evidence, that he, McMurray, did not have the money to make the payment requested, but in order to obtain it would have to secure the same upon the cattle, and if Russell was willing and consented that McMurray should borrow the money and secure it upon the cattle, and that in pursuance

thereof McMurray did borrow from defendant the sum of $28,925 and secured it by mortgage upon the cattle, and defendant loaned said money and took said mortgage relying upon such willingness and consent of Russell, and said money was by McMurray paid to Russell, and afterwards delivered to McMurray, the cattle, including those in controversy, under the said contract, and McMurray shipped them to defendant to be sold, and defendant was to be reimbursed out of the net proceeds for such loan, and interest thereon, and until such loan and interest had been paid in full plaintiff or Russell would have no claim against any of the proceeds of said cattle in the hands of defendant, then in that event you will find for the defendant, aside from all other questions presented by the other instructions.

"2. The court instructs the jury that if they find from the evidence that Russell turned over the cattle in question to McMurray, at Norman, without insisting upon payment at that time, and if Russell knew when he so turned them over that the cattle were to be shipped to defendant and sold by it, and for such purpose, and with that in view, turned over the cattle as above stated, and permitted McMurray to ship and bill them in his own name, and trusted to McMurray instead of the cattle to get his pay, then such acts are prima facie evidence for defendant that Russell waived any provision as to cash payment at the time of the delivery, and by prima facie evidence is meant such evidence on the part of the defendant that if not rebutted by testimony given for the plaintiff raises such a degree of probability in its favor that it must prevail, if you believe it to be true; and if you find such waiver on the part of Russell, then your verdict must be for defendant."

Under these instructions the jury returned a verdict for the plaintiff for $8,141.33, and from the judgment thereon the defendant appeals.

Counsel for defendant contend that the court erred in refusing to instruct the jury to return a verdict for the de-

fendant on the evidence, and in submitting the issues to the jury. The substance of this contention is that under the circumstances the court ought to have held as a matter of law that Russell waived the payment of the balance of the purchase money when the cattle were shipped at Norman. In this proposition we can not concur. It appears from the evidence that the defendant was in with McMurray on this deal from the beginning. They both wanted to handle these cattle at the price Russell was willing to take for them. Defendant was willing to advance the cash payment that Russell required, provided McMurray could obtain a bill of sale of them from Russell. This Russell refused to give. Nevertheless the trade was consummated on the terms set out in the contract, the contract approved by the defendant and McMurray's drafts on the company for the cash payments promptly honored. All parties knew that these cattle when delivered were to be shipped to the defendant, and the defendant knew when receiving them that the balance of the purchase money had not been paid. Russell might have demanded that the remainder of the purchase money be paid before any of the cattle were shipped, but certainly he could not have done so with very good grace when at the contract price 936 head of them had been paid for by and were being shipped to the very party who had paid for them. Before the last load was shipped, however, he did make the demand. In that load there were 143 head of cattle paid for, and 166 head, not paid for. Under these circumstances Russell having every reason to believe that the balance of the purchase money was to be paid by the defendant in any event, did not insist upon payment at Norman, but consented to go to Kansas City with the cattle for his money, where he was promised payment by McMurray on their arrival. Upon their arrival at Kansas City with the cattle and before they were sold, Russell again demanded payment of the balance of the purchase money from both defendant and McMurray, was beguiled into inaction by their promises, until after the cattle

were sold, and then payment was flatly refused.

As the court properly told the jury in instruction numbered 3 for plaintiff, the defendant in respect to the right of Russell to cash payment stood "in no better attitude or plight than did McMurray." And while by the physical delivery of the cattle at Norman, a prima facie case of waiver was made as declared in instruction numbered 2 for the defendant, that prima facie case was subject to rebuttal by proof that a waiver was not intended, a fact to be determined by the jury under all the circumstances shown in evidence. [6 Am. and Eng. Ency. of Law (2 Ed.), 475 and 476; Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558; Oester v. Sitlington, 115 Mo. 247; Ehrlich v. Aetna Ins. Co., 88 Mo. 249.] The court did not err in refusing the defendant's peremptory instruction for a verdict and submitting the issues to the jury. The case was fairly covered by the instructions, and we find no ground for reversal in the refusal of any of defendant's instructions.

Of the instructions on which the issues were submitted, we find material error in but one, and that one is numbered 4, given for the plaintiff. In which the jury are instructed, in case the issues are found for the plaintiff, that the amount plaintiff is entitled to recover is $8,141,33, the amount of the proceeds of the sales of the last installment of cattle. This was error. The plaintiff was only entitled to recover the value at the contract price of the cattle included in that installment that he had not been paid for, which as we have seen was $5,158.56, and from that amount also should have been deducted the interest on $26,925 at eight per cent from October 20 to November 15, 1897, provided for in the contract, say $155.56, leaving the sum of $5,003 as the amount which the plaintiff *ex aequo et bono* was entitled to recover in this action. For the error in this instruction the judgment will be reversed and cause remanded, unless within twenty days the plaintiff will remit $3,138.33 thereof, in which event the judgment will be affirmed.