# STROTHER v. McMULLEN LUMBER COMPANY, Appellant.

### Division Two, December 22, 1906.

1. **CONTRACT: Interpretation.** A provision of a contract which in unconditional language seems to invest title in the vendee of lumber upon delivery, must be read in connection with all other provisions thereof in arriving at a correct understanding of what the real intention of the parties was. That rule of construction is now canonized in this State for both contracts and statutes.

2. **REPLEVIN: Delivery: Cash Payment: Contract.** Notwithstanding unconditional language in a contract that title to lumber was to vest in the purchaser upon its delivery, yet if it is clear from further provisions of the contract that the intention of the parties was that the sale was for cash on delivery, the payment of the purchase price was a condition precedent to the vesting of the title in the vendee, and upon failure to make payment the vendor may maintain replevin.

3. ———: ———: ———: **Concurrent Acts.** When the vendor makes an actual delivery upon the faith of the contract that payment will be made immediately, no property in the chattels passes to the vendee if the vendee fails to pay therefor, and for such failure the vendor may maintain replevin, for in such case the delivery and payment were meant to be concurrent acts.

4. ———: ———: ———: ———: **Case Stated.** The plaintiff contracted for the sale and delivery to defendant of the output of his saw mills during the year 1902, the delivery to be at the lumber yard adjoining the mill. The contract provided that "immediately on the delivery of any lumber upon said lumber yard the title to said lumber shall at once vest in" defendant, and that "all lumber as it is sawed and before piling and stacking shall be graded and measured" by defendant's inspector, and "all lumber shall be paid for in full every thirty days." *Held,* that the contract constituted an executory sale of all lumber sawed by plaintiff during the year 1902, to be delivered in installments, measured by the quantity manufactured during each thirty days, and the price to be paid at the end of each installment delivered, and not within thirty days thereafter; and plaintiff, having delivered the lumber sawed during Au-

gust, and having on September 1st demanded payment and that being refused, is entitled by replevin to recover the lumber.

5. ———: ———: ———: ———: **Evidence as to Meaning: Harmless Error.** Where the trial court reached the conclusion that the contract on its face was one for a cash sale, error in permitting witnesses to testify that in their opinion the contract was one for a cash sale, is harmless.

6. **APPELLATE PRACTICE: Replevin: Judgment for Damages: Remittitur: Abstract.** Where it is stated in respondent's abstract that plaintiff in the replevin, after verdict and before appeal and motion for new trial, entered a remittitur of the damages allowed, and no objections to that abstract are filed, error of the jury in awarding the damages for lack of proof is not an open question.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*Jones, Jones & Hocker* and *Gann & Peaks* for appellant.

(1)   There was a complete delivery of the lumber pursuant to and under the terms of the contract; the title thereto vested in defendant; plaintiff had no property in the lumber; and the court should have directed a verdict for defendant and erred in submitting to the jury any question pertaining to the title or right of possession. Lumber Co. v. DeLisle, 107 Mo. App. 615; Hatch v. Oil Co., 100 U. S. 124; Dexter v. Bevens, 42 Barb. 575; People to use v. Sheehan, 118 Mich. 539; Izett v. Stetson, 22 Wash. 301; State v. Wharton, 117 Wis. 558; Burrows v. Whitaker, 71 N. Y. 291; Hyde v. Lathrop, 3 Keyes (N. Y.) 597; Leonard v. Davis, 65 U. S. 483; Glass v. Blazer, 91 Mo. App. 564; Ober v. Carson, 62 Mo. 214.   Where the contract is silent the title certainly passes where the contract expressly so provides. Williams v. Evans, 39 Mo. 202; Siglerson v.

Kahmann, 39 Mo. 206; McMillan v. Schweitzer, 87 Mo. 402; Dowell v. Taylor, 2 Mo. App. 332; Roberts v. Boulton, 56 Mo. App. 405; Knitting Co. v. Blanchard, 69 N. H. 447. (2) The trial court should not have received evidence that in the opinion of the witness the contract in question constituted a "cash sale" or that it was the custom at Caruthersville to treat such contracts as "cash sales;" nor should it have instructed the jury that the contract in question was in fact a cash sale. Kendall B. & S. Co. v. Bain, 46 Mo. App. 589; Ober v. Carson, 62 Mo. 214; So. Trust Co. v. Stanard, 44 Mo. 71; Heyworth v. Miller Co., 174 Mo. 185; Haskins v. Warren, 115 Mass. 514; note to Fishback v. Van Dusen, 24 Am. L. Reg. 515; Mechem on Sales, 541. (3) The lumber having pursuant to an order of delivery been delivered to plaintiff at the commencement of the action, the judgment against the defendant for its value ($9,653) or for its possession at the option of plaintiff (when he had previously elected to take it, had taken it and disposed of it) was erroneous. Baird v. Taylor, 30 Mo. App. 580; Hanlon v. Goodyear, 103 Mo. App. 421. (4) There was no proof of any damages to plaintiff by the taking or detention of the lumber and that part of the judgment ($500 damages) is erroneous. There was no plea of special damages in this case. Cook v. Clary, 48 Mo. App. 167; Reno v. Kingsbury, 39 Mo. App. 245; Wangler v. Franklin, 70 Mo. 659.

*C. G. Shepard, Brewer & Collins* and *R. P. & C. B. Williams* for respondent.

(1) In a sale for cash on delivery the title does not pass until payment is made, and in such case if payment is refused the seller has an election of remedies; he may affirm the sale and sue for the purchase money; or he may revoke the sale and sue in replevin for the possession of the property delivered. Johnson-Brink-

man Co. v. Central Bank, 116 Mo. 558; Johnson-Brink-
man Co. v. Railroad, 52 Mo. App. 407; Johnson-Brink-
man Co. v. Railroad, 72 Mo. App. 437; Hall v. Railroad,
50 Mo. App. 179; Strauss, Prit & Co. v. Hirsch & Co.,
63 Mo. App. 95; 1 Mechem on Sales, sec. 554; Doyle v.
Turpin, 57 Mo. App. 84; Mugan v. Regan, 48 Mo. App.
461; Southwestern Freight & Cotton Express Co. v.
Plant, 47 Mo. 517; Bank v. Mill & Lumber Co., 152 Mo.
145; Johnson v. Parrot & Barnes, 92 Mo. App. 199. (2)
Where a contract for the sale of goods has been made
and nothing is said as to the time of payment, the law
presumes that no credit is to be given, and that the
price is to be paid concurrently with the delivery of the
goods, or the sale is termed one for cash. Under such
circumstances, the payment of the price is deemed, by
implication, a condition precedent to the transfer of the
title. 1 Mechem on Sales, sec. 543; Bergan v. Magnum,
98 Ga. 514; Paul v. Reed, 52 N. H. 136; Turner v.
Moore, 58 Vt. 455; Evansville v. Erwin, 84 Ind. 457;
Whitewell v. Vincent, 4 Pick. (Mass.) 449; Reed v. Up-
ton, 10 Pick. (Mass.) 522; Fishback v. Van Dusen, 33
Minn. 111. (3) "It is not necessarily to be inferred
where a conditional bargain has been made, and a de-
livery has immediately taken place upon the expecta-
tion that the promised payment or security will short-
ly be given, that the sale *ipso facto* becomes absolute.
There is always an implied understanding that the ven-
dee is acting honestly, and that he takes the goods sub-
ject to the contract. It is not necessary, therefore, that
the vendor shall in express terms declare that he makes
the delivery conditional; it is sufficient if the intent
of the parties that the delivery is conditional can be in-
ferred from their acts and the circumstances of the
case." 1 Mechem on Sales, sec. 551; Smith v. Dennie, 6
Pick. (Mass.) 262; Fishback v. Van Dusen, 33 Minn.
111; Leven v. Smith, 1 Denio (N. Y.) 571; Peabody v.
Maguire, 79 Me. 572; Merrill Fur. Co. v. Hill, 87 Me.

17; Farlow v. Ellis, 15 Gray 229; Paul v. Reed, 52 N. H. 136; Ferguson v. Clifford, 37 N. H. 86; Bainbridge v. Caldwell, 4 Dana 213; Wabash Elevator v. Bank, 23 Ohio St. 311; Railroad v. Erwin, 84 Ind. 457; Buskirk Bro. v. Peck, 50 S. E. 432. (4) The clause of the contract providing for payment at the end of a fifteen days' period of delivery, is not a provision for time for payment, but is a provision for time for delivery.

GANTT, J.—This is an action of replevin brought in the circuit court of Pemiscot county, Missouri, on the 19th day of September, 1902, to recover possession of certain lumber alleged to have been wrongfully detained by the defendant. The property was seized by the sheriff under a writ of replevin, and the plaintiff gave bond for the same, and said property was delivered to the plaintiff, in whose possession it was at the time of the trial.

The answer of the defendant was a general denial, and an affirmative allegation that the property sued for was owned by the defendant, and there was a prayer for judgment for damages, for the wrongful taking thereof by the plaintiff, in the sum of $2,500. There was a verdict and judgment for the plaintiff.

The evidence established that on the 25th of January, 1902, the plaintiff Strother entered into a contract with the defendant, the McMullen Lumber Company, by which Strother sold and agreed to deliver to the defendant the out-put, during the year 1902, of the oak and ash lumber of the "Michaels" or "Lower" mill owned by Strother, the lumber to be delivered to the defendant at the lumber yard (leased to the defendant by Strother and) adjacent to the mill. The contract provided that "said lumber shall be delivered to the second party [McMullen Lumber Company] on the lumber yard of the second party hereinafter designated." Among other stipulations the contract contained

the following: "Upon and immediately on the delivery of any lumber by the first party [Strother] to the second party [defendant] or its assigns, or whenever any lumber cut by the first party for the second party shall be put or placed upon said lumber yard the title to said lumber shall at once vest in said second party." The contract further provided: "All lumber cut under this agreement shall be graded and measured by the McMullen Lumber Company through its authorized inspector, as the same is sawed and as it comes from the mill and before piling and stacking." The contract also provided: "All lumber sawed under this contract shall be well manufactured of the usual and customary lengths among lumber men or standard lengths. Oak and ash shall be sawed from one to four inches thick as may be directed by the second party. All lumber to be so cut as to measure plump the thickness required when dried for market;" and: "All lumber shall be paid for in full by the second party or its assigns according to the above schedule of prices every fifteen days, at which time all lumber sawed and delivered as aforesaid to the second party during the preceding fifteen days shall be reported by the said McMullen Company's inspector to their head office in Chicago and paid for by said McMullen Lumber Company by check on some responsible bank in Chicago drawn to the order of the party of the first part, except two dollars per thousand feet may be retained on all lumber so inspected and taken up by the inspector of the said McMullen Lumber Company until loading on the barge is completed, to cover estimated cost of hauling and loading. When said lumber is finally delivered and loaded on barge at Caruthersville, as above provided and reported by the McMullen Lumber Company's inspector, the two dollars per thousand feet so deducted shall be paid by the party of the second part to the party of the first part by check on Chicago

as above provided. . . . In case the party of the second part should desire delivery of any part or all of the said lumber after it has been 90 days or over on stacks as above provided, then the party of the first part hereby agrees to deliver said lumber F. O. B. cars at Holland Station, Pemiscot county, Missouri, and in case of said delivery F. O. B. cars at Holland Station, the party of the second part shall have the right to deduct and detain from the two dollars per thousand feet above referred to, the sum of one dollar and twenty cents per thousand feet, and pay to the party of the first part the balance of eighty cents only.''

On the 21st day of April, 1902, the plaintiff Strother made another contract containing the same stipulations as above recited for the sale of the out-put of oak, ash and cotton-wood lumber of and from the saw mill of plaintiff known as the ''Eagle Lake Mill'' between the first day of June, 1902, and the first day of June, 1903.

The testimony shows that the lumber in dispute was sawed and delivered under the contracts above referred to and the same was put, stacked and piled on the leased land adjacent to the mill of the plaintiff. It was conceded by both parties that all the lumber sawed and delivered by plaintiff to the defendant prior to August 1, 1902, was paid for by the defendant. On the part of the plaintiff the testimony tended to show that all of the lumber replevied was sawed after August 1, 1902, while the defendant claims that part of the lumber replevied, amounting to twenty-nine stacks and worth about twenty-five hundred dollars, was delivered prior to August 1, 1902.

The testimony for the plaintiff tended further to show that by mutual consent the stipulation as to fifteen days was changed to thirty days. On or about the first of September, 1902, after the delivery of the thirty days including the month of August had become com-

plete, the plaintiff made a demand on the defendant for payment for lumber that had been delivered during the month of August. The defendant refused payment upon the ground that there had been a shortage in some lumber that had been previously sold and delivered by the plaintiff to the defendant. The plaintiff continued to make demand from time to time until about the 15th of September, and the defendant continued to refuse payment. Whereupon the plaintiff instituted this suit on the 19th of September, 1902, claiming that the sale was one for cash on delivery and that payment of the price was a condition precedent to the passing of the title. The circuit court construed the contract as one for cash on delivery, and instructed the jury to this effect and defendant assigns this as error. There was also testimony on the part of the plaintiff that, where lumber is sold under executory contract of sale to be delivered and manufactured, delivery is made one plank at a time as the lumber is sawed and that it is not practicable to make settlement for each plank as it is sawed and delivered, but that the custom and practice among lumbermen is to make settlement for a certain quantity manufactured and delivered during a certain period of time, and that where the contract provides for payment in full every fifteen days of all lumber delivered during the preceding fifteen days it is a cash sale. The defendant objected to this evidence upon the ground that the contract speaks for itself. The court overruled this objection and the defendant excepted. As showing exactly how this question was raised, this question was asked one of plaintiff's witnesses: "Q. I will ask you if a contract made for the cut of lumber for a year, to be measured, stacked on the yard as it comes from the saw, and to be paid for every fifteen days for the amount cut on the previous fifteen days, is that usually understood to be a cash or credit sale?" Objected to by counsel for the defendant as irrelevant,

incompetent and tends to prove no issue involved in this case. Objection overruled, defendant excepts. Answer: "I understand that where they inspect the lumber for fifteen days and settle for the lumber, it would be a cash sale." On the part of the defendant there was evidence that the lumber had increased in value since the date it was replevied from five to six dollars per thousand feet. The jury in their verdict found the value of the property to be $9,653, and assessed plaintiff's damages at $500. The judgment was in the alternative for the possession of the property or in lieu thereof for the sum of $9,653, and also for the sum of $500 damages.

Motions for new trial and in arrest were filed, heard and overruled, and the defendant appealed.

I. The basic proposition in this case is whether the title to the lumber in controversy vested in the defendant when the lumber was delivered on the lumber yard leased to the vendee by the vendor near the vendor's mill, or was dependent upon the payment of the contract price therefor. If the latter, as payment was refused, replevin was maintainable. If we are to look alone at that provision in the contract which stipulates that "immediately on the delivery of any lumber by the party of the first part (the plaintiff) to the second party (the defendant), or whenever any lumber cut for the second party by the first party shall be put or placed upon said lumber yard, the title to such lumber shall at once vest in said second party," unquestionably it should be held that the title had passed when this action was commenced. But it is insisted by the plaintiff that notwithstanding the unconditional language of the above-quoted provision of the contract it must be read with all other provisions of the contract in order to arrive at a correct construction of what was the real intention of the parties. The defendant accedes to this suggestion; indeed, this rule may be said to have been

canonized in this State in the construction both of statutes and contracts. But the contention of the defendant is that there is nothing in the other provisions of the contracts which in any manner tends to show that it was the intention of the parties to the two contracts in evidence that the lumber was to be paid for in cash on delivery. Whereas, the plaintiff insists that the circuit court was correct in holding that the contracts evidenced a sale for cash on delivery when all the provisions of the contracts are taken into consideration. If the sale was for cash on delivery the payment of the price was a condition precedent to the vesting of the title to the vendee and in such case the vendor has an election of remedies.

In Johnson-Brinkman Co. v. Central Bank, 116 Mo. l. c. 570, this court said: "As between vendor and purchaser, where the sale of the chattels is a cash sale, the delivery of the thing sold and the payment of the purchase money are concurrent acts, and the former may reclaim his property, if the purchase money be not paid according to the terms of the sale, either in the hands of the vendee, or of a purchaser with or without notice of the terms of the sale and that the purchase money has not been paid, provided the vendor has not waived the cash payment and has been guilty of no laches or such conduct as would estop him from so doing. A cash sale and a sale upon subsequent condition are entirely different. In the first, the payment of the purchase money and delivery of the property are concurrent acts, one and the same transaction, while the latter is a sale and delivery of the thing sold on condition subsequent, subject to be defeated by failure of the purchaser to comply with the terms of the contract of purchase. The former may be avoided by the vendor upon failure by the vendee to pay the purchase money, while the property is in his hands or in the hands of any

other purchaser, unless the payment of the purchase price has been waived.''

In the case of Strauss, Pritz & Co. v. Hirsch & Co., 63 Mo. App. l. c. 102, it was said: ''The vesting of the title to the goods in the purchaser may be made to depend upon his performance of some condition. And if that be the nature of the transaction, a transfer of the possession, before the performance of the condition, does not pass the title. The condition precedent which the purchaser is required to perform before acquiring the title, is the payment of the price. When that condition is express, the title does not pass before the payment of the price, although the possession is given the purchaser. [Ridgeway v. Kennedy, 52 Mo. 24; Parmlee v. Catherwood, 36 Mo. 479; Little v. Page, 44 Mo. 412] . . . . . But if the possession is obtained by the buyer with the understanding that the payment of the price must follow immediately, then the delivery is only conditional, and the title does not pass until the price is paid. The cases seem to fully establish the principle that, where goods are sold on condition to be performed immediately, and the vendor makes an actual delivery upon the faith that the condition will be immediately performed, and then comes with reasonable speed and demands performance of the condition and it is refused, no property in the goods passes to the vendee, and the vendor may maintain replevin.''

It is generally laid down in the books that the passing of title is one of intention, and such intention must be deduced from the contract construed in the light of the circumstances under which it was made, including the nature and character of the business and the subject-matter to which the contract relates. Looking at the two contracts in the light of the foregoing principles, it seems to us that they constitute an executory

sale of all the lumber to be manufactured by the plaintiff during the year's time at the two mills named in the contracts, to be delivered in installments during the year, such installments to be measured by the quantity manufactured during each thirty days of the time, and the price to be paid at the end of each installment delivery. On the part of the defendant, it is earnestly insisted that the payment of the price under these contracts was stipulated to be made fifteen days after the delivery, whereas the plaintiff contends that there is nothing in the contracts to show that there was any intention whatever that the defendant should have any credit or be given time for payment, but that the contracts properly construed simply provide for time for delivery, that the lumber manufactured during the fifteen days period, afterwards mutually changed to thirty days, was to be paid for at the end of this time; that the delivery during that thirty days did not become complete until the last plank was delivered at the end of such time and that the contracts then say the payment was due, and that this is a sale for cash on delivery. The solution of this question lies in the determination of which one if these constructions we must adopt. It is manifestly not practicable in a sale of this kind for the defendant to pay and settle for each plank as it was sawed and delivered, but the only convenient and practicable way was for the parties to arrange for the delivery and payment in installments, that is to say, all lumber sawed and delivered during the prescribed number of days, to-wit, thirty days, should constitute an installment delivery and at the end of this time payment should be made for the quantity delivered during the installment period. The question of what or what is not a delivery does not seem to us to be involved in this case. We think that the parties clearly intended that the putting of the lumber in the stacks on the lumber yard should be sufficient to pass the title so far

as delivery only is concerned. When it is considered that each plank was to be inspected by the defendant's inspector before it was placed in the stack on the lumber yard, and that the inspector of the defendant accepted the planks and caused them to be put in the stacks, we think the defendant was estopped from saying that the planks were not of the kind and the dimensions specified in the contracts. This provision was for the protection of the defendant and we no not think that the plaintiff is in a position to say that the delivery was not complete when the planks were put in the stacks, or that there was something still to be done to identify them as the property embraced within the contracts, nor do we understand that there is any such question in this case, as it is the contention of the plaintiff himself that the property was delivered as required of him and that it was of the kind and quality called for by his contracts. It is true that the contracts do not expressly use the words "cash on delivery" but we incline, after a careful examination of all the provisions of the contracts, to the opinion that there was no extension of credit intended by the parties to these contracts for the payment of the lumber. In the absence of any provisions for credit and for further time for the payment of the purchase price, the law presumes that it was the intention that the lumber should be paid for at the end of each thirty days delivery.

The language of the contract is: "All lumber shall be paid for in full by the second party or its assigns according to the above schedule or prices every fifteen days, at which time all lumber sawed and delivered as aforesaid to the second party during the preceding fifteen days, shall be reported by the said McMullen Company's inspector to their head office in Chicago and paid for by check on some responsible bank in Chicago drawn to order of the party of the first part." By the very terms of this agreement, the defendant was in no

default until the last stick of the lumber sawed and delivered during the thirty days, had been delivered, and then the contracts provide that thereupon the defendant shall pay for the same in full up to that time. While the contracts provided for the sale of the whole output for the year, it is apparent that it was what we denominate a severable agreement. It is manifest that the contracts do not provide for the payment at one time for the whole output, but for the payment therefor at the end of each fifteen days, and this being so the plaintiff was entitled to payment for all lumber sawed and delivered during the fifteen days. It is perfectly apparent that fifteen days time was not given for the payment of any of the lumber so delivered, but that the output for fifteen days was in the contemplation of the parties to be delivered for that purpose, and that the payment should be concurrent with the completion of the fifteen days delivery, and the consideration to be paid therefor was several and apportioned to said delivery immediately upon its being completed, and so both parties had construed the contracts, because it is conceded that up to the first of August the defendant had paid for each fifteen days delivery made prior to that date. Neither is there the slightest evidence that the plaintiff had waived the payment for each fifteen days delivery as made, and when the delivery for the month of August was complete, he came with reasonable speed and demanded the payment when due by the contracts. When the delivery and the payments are concurrent before the plaintiff could demand the payment he was required to first perform his own part of the contracts by making a complete delivery of all the lumber cut and sawed for the month of August. We can arrive at no other conclusion than that under these contracts the parties had stipulated for a cash sale and that the deliveries and the payments therefor were intended to be concurrent. And, as already said, when

one party upon the faith of the contracts makes an actual delivery upon the faith that the payment will be made immediately, no property in the goods passes to the vendee if the buyer fails to comply with his part of the contracts, and the vendor may maintain replevin.

Having reached the conclusion from the terms of the contracts and the nature and character of the business and the subject-matter of the contracts and the total failure of any agreement for any extension of credit, that the contracts provided for a cash sale, we are confronted with two apparently conflicting provisions in the contracts, to-wit, one providing that the title shall pass to the vendee upon putting or placing of the lumber on the lumber yard, the other that the lumber shall be paid for in cash upon delivery, and hence that the title did not vest until the payment of the purchase price therefor.    Obviously it is our duty, if possible, to so reconcile these apparent conflicting stipulations as to do no injury to either of the parties to the contract, and at the same time not to make contracts for the parties to which they have not agreed.   As already said, we think it is clear that the parties intended that the putting or placing of the lumber on the lumber yard should be sufficient to pass the title so far as delivery was concerned, but the other provision of the contracts, to-wit, the payment of the purchase price, still remained a condition precedent to the vesting of the title.    That both parties intended that the payment for the lumber was to precede the complete passing of the title, we think is clear when all the provisions of the contract are considered together.   We think the circuit court correctly construed the contracts to provide for a cash sale and for the payment on delivery of the lumber, and as there is no pretense that the plaintiff did not comply with his part of the contract, and it is conceded that the defendant did not pay for the August delivery when demanded by the plaintiff, but

insisted on holding on to the lumber without payment, giving as an excuse for his refusal the claim that there had been a failure to deliver a portion of the lumber on previous deliveries, which its own inspector had received and estimated and for which the defendant had paid, the plaintiff was justified in treating defendant's conduct as a general refusal to carry out the contracts on its part, and plaintiff was entitled to rescind the contracts and refuse to make any further deliveries under them and to bring his replevin for the lumber which he had delivered in good faith on the expectation of receiving payment therefor as provided by his contracts.

In Bloomer v. Bernstein, L. R. 9 C. P. 588, it was held that "where there is a contract for the sale of goods to be delivered by installments, the price of each installment being payable on delivery, and the buyer does not pay for one installment under such circumstances as to give the seller reasonable ground for believing that he will be unable to pay for the installments to be delivered in future, and that he does not intend to go on with the contract, the seller is justified in repudiating the contract." [See, also, Fletcher v. Cole, 23 Vt. 114; Star Glass Co. v. Morey, 108 Mass. 570; Stephenson v. Cady, 117 Mass. 6; Withers v. Reynolds, 2 B. & Ad. 882.]

The case of Creelman Lumber Company v. De-Lisle, 107 Mo. App. 615, is not in conflict, we think, with the conclusions which we have reached. The great question considered in that case was whether the acts and things that had been done to the property were sufficient under the contract to constitute delivery so as to pass the title. The Court of Appeals concluded, and we think rightfully, that the buyer had done all with respect to payment that he was required to do, and the evidence tended to show a sufficient delivery to pass the title.

Among the cases cited and urged upon our attention by the defendant is that of Hatch v. Standard Oil Co., 100 U. S. 124, but an examination of that case will show that the question at bar, to-wit, the effect of a cash sale and the failure on the part of the buyer to comply with the contract, was not before the court. The question came up upon an attachment against the vendors and an action of replevin by the vendees. The Merritt Bros. agreed by a contract in writing to manufacture for the Standard Oil Company, at a stipualted price, a quantity of staves and pile them on lands adjoining their mill, which was leased to the company for that purpose. The contract provided that on the staves being counted from week to week, the Merritts would be entitled to a certain percentage of the price ascertained, to-wit, seventeen dollars per thousand, and upon piling and counting the delivery should be complete and the staves were thenceforth to be absolutely and unconditionally the property of the Oil Company. Upon the delivery of all the staves contracted for, the company should pay the balance of the contract price deducting therefrom interest at ten per cent per annum on the advances of the seventeen dollars per thousand from the time paid until the staves should be received at Cleveland, Ohio. Before all the staves were furnished and the final payment made by the Oil Company, a creditor of the Merritts caused an execution to be levied upon the staves which had been counted and piled. It appeared that the stipulated percentage, to-wit, seventeen dollars per thousand, had been fully paid. Upon this state of the facts the Supreme Court of the United States held that the title to the staves was in the Oil Company and not subject to the execution of the creditor. It is clear that that case is not in point. In that case the vendee had done all with reference to the payments for the staves that it was required to do, and it appeared further that time was

given for the payment of the balance upon the completion of the whole contract. The case turned upon a question of delivery. In the case at bar, the delivery is admitted and it clearly would have been sufficient to pass the title if the payment of the price had been made in compliance with the contract.

It would serve no good purpose to review each and every authority cited by the learned and industrious counsel for the defendant in support of their position in this case, because a critical examination will show that they nearly or quite all depend upon the language of the contracts in each case. We are satisfied that the conclusion we have reached is in harmony with our own decisions, especially with that of Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558.

II. It is insisted that error was committed in permitting certain witnesses to testify that in their opinion a contract like the one at bar was a cash sale, but inasmuch as the circuit court reached the conclusion that the contract on its face was a contract for a cash sale, this evidence could not have prejudiced the defendant and is no ground for reversing the judgment.

III. It is also insisted that there was no proof of any damages to the plaintiff by the taking or detention of the lumber and so much of the judgment that allowed him five hundred dollars therefor is erroneous. On this point it is sufficient to say that in the respondent's abstract of the record, duly served upon the appellant, the plaintiff herein distinctly stated that after the verdict and finding of the jury, and before this appeal was taken, or the motion for new trial filed, the plaintiff entered a *remittitur* of five hundred dollars awarded him as damages by the jury for the detention of said lumber. By section 813, Revised Statutes 1899, it is provided: "And in case the opposite party shall not concur in said abstract of record, he shall specify his objections thereto, in writing, and file the same with

the clerk and serve the adverse party with a copy thereof, and thereupon the clerk of the appellate court shall forthwith issue and send an official order commanding the clerk of the trial court to send such appellate court a certified transcript of that part of the record so in dispute.'' In this case no objections were filed in writing to this additional abstract on the part of the respondent, and the respondent disclaims in writing the said five hundred dollars damages. It must be held that that question is no longer before this court, and the judgment of the circuit court must be and is affirmed save and except as to the said sum of five hundred dollars which was remitted in the circuit court.

*Burgess, P. J.,* and *Fox, J.,* concur.