## J. L. WRIGHT, Respondent, v. MISSISSIPPI VAL-LEY TRUST COMPANY, Appellant.

### Springfield Court of Appeals, June 6, 1910.

1. **SALES: Cash Sales: Passing of Title.** The general rule is is that a sale of personal property, unless a different agreement is made, is a sale for cash that is to be paid for on delivery and, unless payment is made on delivery title does not pass and the vendor may retake the property sold. The question as to the time of payment, even though it be a cash sale, may be waived by the vendor, and, if it is, then title passes and becomes complete in the vendee.

2. **———: ———: ———: Sale of Wheat on Merchant's Exchange.** Plaintiff sold on the floor of the Merchant's Exchange in St. Louis a car of wheat, to be delivered to an elevator in East St. Louis. The wheat was sold by sample. By custom, sales of wheat made at the Merchant's Exchange, in the absence of other agreement, were deemed cash sales to be paid upon delivery and ascertainment of weights. This car of wheat was delivered to the elevator and weighed, and a warehouse receipt issued which was sent to purchaser who issued his check therefor. The check was protested for non-payment, the purchaser having failed. *Held*, that the sale was a cash sale and that the title to the wheat did not pass to the purchaser because it was not paid for on delivery.

3. **———: ———: ———: Negotiable Instruments: Collateral Security.** A car of wheat was sold to be paid for on delivery. The delivery was made to the elevator in Illinois which had been designated by the purchaser as the place of delivery, and a warehouse receipt issued and sent to the purchaser, who sent his check in payment therefor. This check was protested for non-payment, the purchaser having failed. The purchaser, in the meantime, had overdrawn at defendant bank and had put up this warehouse receipt to the bank to secure the overdraft. This collateral was put up after the overdrafft had been made. Under the Illinois law, the warehouse receipt was negotiable. *Held*, that the sale of the wheat was a cash sale, that the title had not passed to the purchaser because not paid for on delivery; and *held, further*, that the bank, having taken the warehouse receipt after permitting the overdraft, was not an innocent purchaser thereof, and that plaintiff could recover against the bank in a suit for conversion of the wheat.

4. **BILLS AND NOTES: Bona-Fide Holder: Passing of Title.** The legal title to negotiable paper transferable by endorsement and delivery does not pass to the vendee until actual endorsement and delivery, though the instrument may be purchased and the money paid therefor prior thereto. The endorsement and delivery, when made, have no retroactive force, and the rights of the vendee are to be determined by the facts existing at the time of the endorsement and delivery, and, if this occurs after maturity, he is held to be a purchaser after maturity and is not a bona fide holder for value.

5. ———: ———: **Collateral Security for Pre-Existiing Debt: Warehouse Receipt.** The rule is that one taking a negotiable instrument as collateral security for a pre-existing debt is not a bona fide holder for value, and is subject to equities existing between the original parties thereto. This rule is applied in a case where a warehouse receipt which was negotiable under the law of the State where issued was given to a bank to secure an existing overdraft, notwithstanding that it was given under a prior agreement that collateral would be given whenever the customer was overdrawn. In this case, the distinction was made that there was no prior agreement that this particular warehouse receipt would be put up as collateral in case of an overdraft.

6. ———: ———: ———. The fact that the time which elapsed between the creation of the debt and the transfer of collateral was short can make no difference in applying the rule, that a negotiable instrument taken as collateral for a pre-existing debt, is subject to equities existing between the original parties thereto.

Appeal from the St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

AFFIRMED.

*Abbott, Edwards & Wilson* for appellant.

(1) McReynolds & Co. had a general standing agreement with appellant, made prior to January 18, 1906, providing that McReynolds & Co. would deposit with appellant before three o'clock collateral sufficient to secure appellant against the overdrafts accruing on

that day, and the collateral deposited on January 18, 1906, in compliance with this agreement, was the consideration for said overdraft of that day and hence appellant is a bona fide holder for value in the usual course of business, and will be protected from any claim on the part of respondent. 4 Am. and Eng. Ency. of Law, 289; Tiedeman on Coml. Paper (1889 Ed.), 169; Birket v. Elward, 64 L. R. A. 568. (2) A period of five days having intervened between the surrender of the bill of lading and the receipt by respondent of the check, this was not a sale "conditioned on immediate payment, though in the parlance of trade it may have been called a 'cash sale,' and respondent is estopped to claim the grain against appellant. Bank v. Smith, 107 Mo. App. 178.

*H. A. & C. R. Hamilton* for respondent.

(1) To constitute one a pledgee for value he must take the negotiable paper as security for a debt created at the time on the faith thereof, without notice of equities; one who takes negotiable paper as collateral security for a pre-existing debt, having given no consideration for it, holds it liable to the equities existing between the original parties. Goodman v. Simonds, 19 Mo. 106; Loewen v. Forsee, 137 Mo. 29; Westminster College v. Fry, 192 Mo. 552; Wine Co. v. Rinehart, 42 Mo. App. 171; Watson v. Printing Co., 56 Mo. App. 145. (2) When no express provision is made for time of payment, a sale of personalty is presumed by law to be a cash transaction. Hall v. Railroad, 50 Mo. App. 179; Frazier v. Railroad, 104 Mo. App. 355. (3) As between vendor and purchaser, where the sale of chattels is for cash, the delivery of the thing sold and the payment of the purchase money are concurrent acts, and the vendor may reclaim his property if the purchase money be not paid according to the terms of the sale. Johnson-Brinkman Co. v. Bank, 116 Mo. 558;

Johnson-Brinkman Co. v. Railroad, 126 Mo. 344, 72 Mo. App. 437; Commission Co. v. Commission Co., 165 Mo. 84; Strother v. Lumber Co., 200 Mo. 647; Hall v. Railroad, 50 Mo. App. 179; Straus, etc., Co. v. Hirsch & Co., 63 Mo. App. 95.

COX, J.—Action for conversion of one car load of wheat of the value of $999.38. Recovery by plaintiff and defendant has appealed. The facts out of which this controversy arose as far as necessary to state them are as follows:

On January 13, 1906, plaintiff sold on the floor of the merchants exchange in St. Louis to McReynolds & Company a car load of wheat, then on the track in the city of St. Louis to be delivered at the Southern elevator, East St. Louis, Illinois. The wheat was sold by sample. At the time of sale the weights were unknown and nothing was said about terms of payment. By custom sales made at the merchants exchange, in the absence of any other agreement, were deemed cash sales to be paid for on delivery, and ascertainment of weights. Plaintiff had this car of wheat reshipped with directions to deliver to the Southern elevator, East St. Louis, to the account of McReynolds & Company. This was done and the weight sent to plaintiff and the warehouse receipt for the grain sent to McReynolds & Company who issued to plaintiff their check on defendant, Mississippi Valley Trust Company for $999.38, on January 17th, in payment for the wheat. This check was presented for payment on January 19th and payment refused, McReynolds & Company having failed. On January 18th, McReynolds & Company, having overdrawn on that day their account with the defendant, deposited with the defendant the warehouse receipt aforementioned with other collateral to secure their overdrafts. Plaintiff, upon learning of that fact demanded of defendant the return of the car of wheat or the delivery to him of the warehouse receipt, which was

refused by defendant. Defendant disposed of the car of wheat and applied the proceeds upon the indebtedness of McReynolds & Company, it being insufficient to meet the overdrafts drawn on January 18.

The petition in this case is the ordinary petition for conversion. The answer pleads, and the evidence shows, that the warehouse receipt was negotiable under the laws of Illinois, where it was issued; then alleges that it was the holder of the same for value without notice of the claim of plaintiff or any other person. The reply was a general denial.

There are two questions for determination in this case. The first is, under the facts of this case, did title to the wheat pass from plaintiff to McReynolds & Company? If it did, then plaintiff has no claim whatever against defendant, but if it did not, then if it be true that defendant is a bona fide holder for value of the warehouse receipt, still plaintiff cannot recover, but if it is not a bona fide holder for value, then he can. As to the question as to the title of the wheat having passed to McReynolds & Company, the general rule is that a sale of personal property, unless a different agreement is made, is a sale for cash. That is, to be paid for on delivery, and, unless payment is made upon delivery, title does not pass and the vendor may retake the property sold. [Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558, 22 S. W. 813; Drum Flato Commission Co. v. Creider Commission Co., 165 Mo. 84, 65 S. W. 239; Strother v. McMullen Lumber Co., 200 Mo. 647, 98 S. W. 34.]

The question as to time of payment, even though it be a cash sale, may be waived by the vendor, and if it is, then title passes and becomes complete in the vendee. Under the evidence in this case we think the sale was a cash sale. The fact that the car was on the track and its weights were unknown, made it impossible to determine the amount to be paid until the grain should be weighed. The grain having been sent to the elevator,

there weighed, the weights returned to plaintiff, he having immediately demanded payment and McReynolds & Company having issued their check to him for that purpose, we think clearly shows that the intention of the parties was that payment should be in cash, and the shipping of the grain to the elevator for weight, and the receipt of the check being according to the usual custom, was not a waiver of that provision, and, hence, our conclusion is that, as between the plaintiff and McReynolds & Company, title did not pass to the latter, and when their check was dishonored plaintiff had the right to retake the wheat unless the warehouse receipt, which was a negotiable instrument, was being held by defendant as an innocent purchaser for value.

What we have said in no way conflicts with the case of Bank v. Smith, 107 Mo. App. 178, 81 S. W. 215, to which our attention has been called. On page 190 the court in that case said: "It is not necessary for us to determine whether or not the title to the corn had so far passed from the respondents that they could not have reclaimed it as against the Woodson-Young Grain Company or attaching creditors. What we decide is that the title had vested in the latter company so as to enable it to transfer the property to an innocent purchaser, and that a transfer to such a purchaser took place when appellant discounted the draft on J. H. Wilkes and Company in reliance on the bill of lading."

The court was not called upon to determine the rights between the seller and purchaser for the reason that the holder of the bill of lading and draft in that case was unquestionably a bona fide holder for value and were that true in this case we should have no hesitancy in holding that title had passed sufficiently to permit McReynolds & Company to dispose of the warehouse receipt, as they might any other negotiable instrument.

Defendant contends that the evidence in this case shows that it had what it calls a running agreement

with McReynolds & Company that should they over-draw their account on any date, they would, before the close of business hours on that day, deliver to defendant collateral to secure the money paid on such overdrafts. The court in its finding of facts did not find whether this agreement was actually made or not, but we are disposed to treat this case as though it was made. The question then is whether defendant is a bona fide holder for value of the warehouse receipt in question. This depends upon the force to be given to this agreement, and the assignment of this warehouse receipt under it.

We do not find any case in which this precise question has been decided. There are, however, some decisions which we think, in principle, bear close analogy to this case.

The legal title to negotiable paper transferable by endorsement and delivery does not pass to the vendee until actual indorsement and delivery, though the instrument may be purchased and the money paid therefor prior thereto. The endorsement and delivery, when made, have no retroactive force, and the rights of the vendee are to be determined by the facts existing at the time of the endorsement and delivery, and if this occurs after maturity he is held to be a purchaser after maturity, and is not a bona fide holder for value. [Patti-van v. Care et al., 61 Mo. 439; Weber v. Orten, 91 Mo. 677, 4 S. W. 271; Bishop v. Chase, 156 Mo. l. c. 170-173 56 S. W. 1080; Blankershire National Bank v. Taylor (Mass.), 97 Am. Dec. 70; Haskell v. Mitchell (Me.), 89 Am. Dec. 711; Gibson v. Miller (Mich.), 18 Am. Rep. 98; Clerk v. Whittaker (N. H.), 8 Am. Rep. 286.]

When the payment of the money and the transfer of the legal title are not contemporaneous they must both occur before the holder can assert any rights as a bona fide holder for value. The provision of the law merchant which protects the innocent holder of commercial paper against the defenses available between

the original parties, is an exception to the general rule of law applicable to the transfer of personal property, and being an exception to the general rule of law a party seeking to take advantage thereof must bring himself within its provision, and the application of the exception should not be extended beyond reasonable limits to meet the exigencies of a given case. The reason underlying the rule which protects the innocent holder of commercial paper is that he had paid value on the faith of the validity of the instrument and the solvency of the parties, and when value has not been paid he is not protected.

Coming to the facts in this case, it is clear that no credit was extended nor money paid at the time of the transfer of this warehouse receipt, nor was any money paid in expectation that this particular collateral would be furnished.

The inducement which led defendant to pay the overdrafts was the promise of McReynolds & Company to furnish collateral to secure them; this contemplated that the money should be paid before the collateral was furnished, and, hence, the inducement to pay the money was the promise of McReynolds & Company that some security would be furnished, and not the belief that this particular collateral would be furnished. Surely, defendant in this case, having paid the money on a general promise that security would be furnished, and without any relation whatever to this particular collateral, cannot be in any better position than the purchaser before maturity of a negotiable note transferable by endorsement who pays out his money on the faith of the validity of that particular note, and receives delivery of the note at the time the money is paid, but neglects to have it endorsed until after maturity. To our mind the position of the holder of the note, as just described, is much stronger than that of defendant in this case.

We must determine the rights of this defendant upon the facts as they existed at the time of the delivery of the warehouse receipt for title to it did not pass to defendant until that time. At that time the money had been paid on these overdrafts and the debt was then in existence.

Since the decision of the Supreme Court in Loewen v. Forsee, 137 Mo. 29, 38 S. W. 712, it has been the settled law of this State that one taking a negotiable instrument as collateral security for a pre-existing debt, is not a bona fide holder for value, and is subject to equities existing between the original parties in relation thereto.

We think the facts in this case show the consideration for the transfer of this warehouse receipt to have been a pre-existing debt. The debt was in existence before the transfer was made, and the creation of the debt by the payment of the money on the overdrafts, and the transfer of this collateral cannot be held to be contemporaneous, for the reason that the money was not paid under an agreement that this particular collateral should be furnished, and this being true the fact that the time which elapsed between the creation of the debt and the transfer of the collateral was short, both occurring on the same day, can make no difference.

The case was well tried and the judgment will be affirmed. All concur.