## In re ZERBERSKY.

### BECKER v. FRANKEL et al.

#### (District Court, E. D. New York. December 1, 1922.)

1. **Bankruptcy ⟨⇒303(3)—Evidence held to show fraudulent conveyance of bankrupt's property.**

   Evidence *held* to require a finding that a conveyance of real property by bankrupt and his wife was not in good faith, but was fraudulently made to defeat collection of a judgment of damages for wrongful death, which was the only claim against bankrupt's estate, and the action for which was pending when such conveyance was made.

2. **Bankruptcy ⟨⇒305—Wife, as party to fraudulent conveyance, entitled to no relief, when conveyance set aside.**

   Where a bankrupt and his wife fraudulently conveyed real property to defeat the enforcement of a judgment for damages for wrongful death, the bankrupt's wife, being a party to her husband's dishonesty, is entitled to no relief.

3. **Bankruptcy ⟨⇒186(1)—Purchaser under fraudulent conveyance must account to trustee for rents.**

   One to whom a bankrupt fraudulently conveyed property must account to the bankrupt's trustee for rentals collected by him.

In Equity. Action by John Becker, as trustee in bankruptcy of Morris Zerbersky, bankrupt, against Leo Frankel and another. Decree for complainant.

James A. Nolan, Jr., of New York City, for complainant.
Herman J. Rubenstein, of New York City, for defendant Frankel.
Feinstein & Coleman, of Brooklyn, N. Y., for defendant Zerbersky.

GARVIN, District Judge. This is an action brought by a trustee in bankruptcy attacking an alleged fraudulent conveyance of real property to defendant Frankel by the bankrupt and his wife. The relief sought is a decree compelling Frankel to deliver the property to the trustee. The bill of complaint alleges the title of the real property was in the bankrupt, and the answer of the latter's wife denies this allegation, but fails to set forth any state of facts showing affirmatively that she and her husband were owners by the entirety of the property. By law she would have a dower interest therein.

The proofs show that the bankrupt caused the death of an infant, as a result of which an action was brought against him, upon which

a judgment was recovered on March 22, 1922. That action was pending on March 11, 1921, on which day the bankrupt transferred the property in question to Frankel. The check that was paid on the same date as a part of the consideration was the defendant Frankel's check. Weinburg, the bankrupt's brother-in-law, had told Frankel that the bankrupt had been involved in an accident with his (the bankrupt's) automobile, was in trouble, and wanted to sell the property in question. The same attorney represented Weinburg and Frankel, and had been their counsel for many years.

Weinburg withdrew $2,000 from his bank on March 11, 1921, and testified before the referee that he did not know why he withdrew it. At the trial he testified that he withdrew it to pay contractors, although he himself was not in business at that time. He has no records, such as bank books or account books; all have been destroyed. He made a most unfavorable impression as a witness. The records of the bank in which Frankel kept his account show that on January 21, 1921, when the contract to sell the property was made, $500 was deposited. On March 11, 1921, $2,000 in cash was deposited in his 'account. On the same day a check for $2,000 on Frankel's account was drawn. This was paid to the bankrupt, who in turn paid it to Weinburg, who was thus reimbursed for the $2,000 he withdrew on the same date. Frankel has never explained where he obtained the $2,000 in cash which he deposited the same day, as above set forth.

There was testimony before the referee that the bankrupt received $2,000, which he took to his lawyer. This I reject as wholly false. The lawyer admitted at the trial that he received no such sum; at the trial the bankrupt gave another explanation. I regret to say that I cannot escape the conclusion that he is wholly unworthy of belief. The referee in bankruptcy testified that, during the progress of the bankrupt's case before the referee, Frankel testified regarding his (Frankel's) check stubs. At that time the stubs showed that two checks made out January 11, 1921, in connection with the alleged sale of the property, both checks to the bankrupt, were made out for loans. Since then his stubs have been changed by erasures to read "Linwood St.," apparently meaning the property in question, by whom it does not appear. There is only one creditor in the case, the judgment creditor in the accident suit which has been mentioned. The property was worth $9,000. It was sold according to the testimony of the defense for $6,500.

[1] The court is of the opinion that the testimony establishes that the transfer to Frankel was not in good faith; that he received the property knowing that the bankrupt desired to transfer it, so that no judgment against the latter could be a lien thereon. All the circumstances connected with the method of payment indicate that Frankel and Weinburg made a conspiracy by which Weinburg, the bankrupt's brother-in-law, was to supply the funds which Frankel used in connection with the alleged purchase of the property. I find that there was gross fraud by the bankrupt and his associates, which distinguishes this case from Termini v. Huth, 191 App. Div. 218, 181 N. Y. Supp. 224.

[2] Bankrupt's wife is entitled to no relief. As to her the deed which she has voluntarily executed is valid. She has no claim to sympathy for she was a party to her husband's dishonesty.

[3] Frankel has been collecting $80 per month rentals for the property since March 15, 1921. For this he must account to plaintiff, and the decree to be entered herein may so provide.

There will be a decree for the complainant.