**In re VENIE et al.**
No. 2522.

United States District Court
W. D. Missouri, S. D.
Missouri, S. D.
Oct. 16, 1948.

See also 80 F.Supp. 247.

M. H. Galt, and A. P. Stone, Jr., of Springfield, Mo., for bankrupts.

Fred A. Moon, of Springfield, Mo., for Citizens Bank.

John Turner White, of Springfield, Mo., for Trustee in Bankruptcy.

RIDGE, District Judge.

This review proceeding presents the question whether the Referee in Bankruptcy erred in construing Section 67, sub. d(4) of the Bankruptcy Act of 1938, 11 U.S.C.A. § 107, sub. d(4), in upholding a chattel mortgage, given to the Citizens Bank of Springfield, Missouri, as security for a loan made for the purpose of enabling one copartner to buy out the one-half interest of his other partner, in the Sandy Anne Candy Company, at a time when such partnership was insolvent. The Referee directed the Trustee in Bankruptcy to pay to the Bank the amount of the loan, plus interest, out of the funds resulting from the sale of the property described in the chattel mortgage. Said property was, by stipulation of the parties and approval of the Referee, sold and converted into cash. The Trustee in

Bankruptcy has duly petitioned for review of the Referee's orders so made.

Francis Joseph Venie and Raphael Glennon Venie, as co-partners, doing business as Sandy Anne Candy, and Francis Joseph Venie and Raphael Glennon Venie, individually, were adjudicated bankrupts by this Court on February 28, 1948. For a period of approximately two years prior to January 9, 1948, Francis and Raphael Venie, as co-partners, doing business under the firm name and style of Sandy Anne Candy, sold candies as manufacturers, jobbers and retailers, in the City of Springfield, Missouri. On January 8, 1948, Francis and Raphael entered into a written contract, by the terms of which the partnership was dissolved and Raphael agreed to sell and Francis agreed to buy the interest of Raphael in said partnership. The consideration for said transaction was that Francis was to pay to Raphael the sum of $2,-000.00 cash, and assume the payment of the debts of the partnership. The deal was closed on January 9, 1948.

On January 9, 1948, Francis informed the Citizens Bank of Springfield, Missouri, that he had purchased the interest of his brother in the partnership and that he needed to borrow $2,000.00 to complete the deal. The Bank made a loan of $2,021.80, evidenced by a promissory note executed by Francis J. Venie, payable sixty days after date, the payment of which was secured by a chattel mortgage on specific equipment and personal property situate in two candy stores which the bank knew had previously been operated by the partnership. The proceeds of said loan were personally received by Francis from the Bank and delivered to his brother, Raphael, as consideration for and in closing of the deal. No part of the proceeds of said loan was deposited in the partnership bank account with said bank, or used to pay partnership debts of Sandy Anne Candy. Francis received the proceeds of such loan in cash, delivered the amount thereof to Raphael, who used the same to pay his individual debts.

After purchase of his brother's partnership interest, Francis Joseph Venie registered the name of Sandy Anne Candy, showing himself as sole owner, with the Secretary of the State of Missouri, as required by the Fictitious Name Statute of said State, and continued the operation of said business until February 28, 1948. On the last mentioned date voluntary petitions in bankruptcy were filed in this Court, and the partnership firm, and Francis Joseph Venie and Raphael Glennon Venie, individually, were each adjudged bankrupt.

Prior to the making of the above-referred-to loan, the co-partnership of Sandy Anne Candy had transacted business with the Citizens Bank for several years, obtaining loans from said Bank in the usual course of business, and maintaining a deposit account thereat. Two loans obtained by the co-partnership, evidenced by renewal notes executed by Francis J. Venie, had been owing to the Bank for approximately one year at the time the loan of $2,021.80, above referred to, was made. From time to time, said loans had been reduced so that on January 19, 1948, by the payment of $200.00 they were consolidated into a single renewal note, in the sum of $1,150.00, which was executed by Francis Joseph Venie, individually. On January 27, 1948, Francis Joseph Venie obtained an additional loan from the Citizens Bank in the sum of $1,075.72, as evidenced by his promissory note of even date, for which he pledged as security certain warehouse receipts.

At and prior to the time the Bank made the loan in the sum of $2,021.80, on January 9, 1948, the co-partnership of Sandy Anne Candy and the individual partners, Francis Joseph Venie and Raphael Glennon Venie, were insolvent, in that their assets were wholly insufficient to pay their debts. The record does not reveal any actual knowledge on the part of the Bank of such facts of insolvency. The Bank, relying upon oral statements made to it by Francis Joseph Venie, in conversation with the Cashier of the Bank, to the effect that the partnership of Sandy Anne Candy was making money and that Francis Joseph Venie and his brother was each solvent, made the loans in question. After the making of the loan of January 9, 1948, however, the Cashier of the Bank did suggest to Francis Joseph Venie that he should have an audit made and put in a

bookkeeping system, which Francis Joseph Venie agreed to do.

After the adjudication in bankruptcy, the Citizens Bank filed its reclamation claim, premised on the chattel mortgage given to it by Francis Joseph Venie, on January 9, 1948. The claim so made by the Bank included not only the loan made to Francis Joseph on January 9, 1948, but also the two subsequent renewal notes, dated January 19th and 27th, respectively, on the theory that other indebtedness due the Bank than that incurred at the time such chattel mortgage was executed was also within the security thereof. The Referee having specifically ruled that such other indebtedness was not within the security of said chattel mortgage and the Bank having sought no review of that portion of the order of the Referee, we shall not further consider that indebtedness as now being within the reclamation claim of the Bank.

The Referee, in allowing the reclamation claim of the Bank under the chattel mortgage dated January 9, 1948, made findings as follows: That the Bank was acting in good faith on January 9, 1948, when it made a loan to Francis Joseph Venie for $2,021.80, for the purpose of buying out his brother's interest in the partnership; that the deal had been made between the brothers, with the exception of the paying over of the money, when the loan was made by the Bank and when the Bank took the chattel mortgage in question as security; that there was no evidence in the case before him to show that there was any fraud, or of any intention of the Bank or partnership taking advantage of each other, or the partnership of any creditor. From the facts so found, the Referee concluded that the Bank's claim should be allowed as a preferential claim and paid out of the assets of the firm in the hands of the Trustee.

We do not believe that under the Bankruptcy Act of 1938, 11 U.S.C.A. § 1 et seq., the facts found by the Referee upon which the claim of the Bank was allowed as a preferential claim are sufficient to sustain such allowance. Neither do we believe that under said Act is the Bank entitled to preferential payment over other firm creditors for the amount of the loan made to Francis Joseph Venie for the purpose of

purchasing his brother's interest in the co-partnership of Sandy Anne Candy.

The agreement for the purchase by Francis of the one-half interest of Raphael, in the partnership in question, is not contained in the record before us. The Trustee here contends "that the partnership was in existence on January 9, 1948". The claimant Bank concedes in its briefs before the Court that "the deal was not closed until * * * January 9, 1948". We therefore conclude that the sale of the one-half interest in the partnership by Raphael to his remaining partner, Francis, was consummated and made in consideration of, among other things, the payment of a cash sum to Raphael. This conclusion is fortified by the fact that the record before us reveals that Raphael acknowledged on the purchase agreement receipt of the cash consideration therefor, at the time it was handed to him by Francis, either on the 9th or 10th of January. Under Missouri law, when a sale is made for cash the transaction is not complete until the purchase price is paid and until then the purchaser gets no title, unless the seller waives payment. Johnston v. Parrott, 92 Mo.App. 199; Wright v. Mississippi Valley Trust Co., 144 Mo.App. 640, 129 S.W. 407; Skinner & Kennedy Stationery Co. v. Lammert Furniture Co., 182 Mo.App. 549, 166 S.W. 1079; Maxwell v. Dunham, Mo.App., 297 S.W. 94. Consequently, the transaction between Francis and Raphael Venie, whereby the latter "transferred" to the former his one-half interest in the partnership of Sandy Anne Candy, was not consummated, so as to pass title to such one-half interest and thereby wind up the affairs of the partnership, until the time of payment by Francis of the purchase price therefor.

At the time Francis appeared at the Bank on January 9, 1948, and obtained the loan of $2,021.80, and secured the same to the Bank by a chattel mortgage covering property then owned by the co-partnership, he was acting as a liquidating partner of the partnership of Sandy Anne Candy. There can be no question in this case but that the Bank, at the time of that transaction, knew, or should have known, that Francis was so acting. The Cashier of the Bank who handled the transaction testified

that he knew Francis was using the proceeds of the loan in question to wind up the partnership, by purchase of the one-half interest of Raphael therein; and, that Francis was pledging to the Bank, by way of a chattel mortgage, assets that were then used by the partnership in the conduct of its business. For the purpose of winding up a concern, a liquidating partner has the same general power to bind the firm as he had before, and he may bind the partnership by borrowing money to effect that purpose. 40 Am.Jur. §§ 282, 283, pp. 324, 325. Therefore, we have no hesitancy in holding, under the particular facts in the instant case, that the loan made by the Citizens Bank to Francis Venie, to effect a winding up of the partnership of the Sandy Anne Candy, was made on the credit of the partners in that concern and that the same is and was a partnership transaction. So ruling, it remains to be determined whether the execution of the chattel mortgage given to secure the payment of said loan was a "transfer" of partnership property within the ambit of the Bankruptcy Act of 1938, as amended, and whether such transfer is a fraudulent one which can now be set aside by the Trustee.

■ Section 67 sub. d(4) of the Bankruptcy Act of 1938, 11 U.S.C.A. § 107, sub. d(4), provides that every transfer of partnership property, when the partnership is or will be thereby rendered insolvent "is fraudulent as to partnership creditors * * * without regard to actual intent" if the conveyance is made, "(a) to a partner, whether with or without a promise by him to pay partnership debts, or (b) to a person not a partner without fair consideration to the partnership as distinguished from consideration to the individual partners." "Transfer" is defined in the Act, 11 U.S.C.A. § 1(30), as including "the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, * * * as a conveyance, sale, assignment, payment, pledge, mortgage * * * or otherwise". It is observed that by the provisions of Section 67, sub. d (4), supra, the intent accompanying or attending a transfer of partnership property is not now a factor to be considered in determining whether a "transfer" of partnership property is a fraudulent one if the partnership firm is then insolvent. The phrase "without regard to actual intent" contained in said section makes manifest that the "intent" on the part of a partner, or one who receives a transfer of partnership property without fair consideration passing to the partnership as distinguished from consideration to the individual partners, to effect or work a fraudulent transfer of partnership property, is now of no consequence. The governing factor, under Section 67, sub. d(4) supra, to be considered in determining whether a transfer of partnership property is a fraudulent one, appears to be whether there is a depletion, before bankruptcy, of the partnership estate which could be used to satisfy creditors' claims against the concern.

■ In the case at bar, "without regard to actual intent" of Francis Venie, or the Bank, to effect a fraudulent transfer of partnership property, it would appear that the giving of the chattel mortgage by the liquidating partner of Sandy Anne Candy was a "transfer" of partnership property within the purview of Section 1(30) of the Bankruptcy Act of 1938, 11 U.S.C.A. § 1(30); that such transfer was given to the Bank without fair consideration to the partnership firm, and as a consequence thereof the same is and was a fraudulent transfer within the meaning and intent of subsection (b) of Section 67, sub. d(4) supra, which may be set aside as a fraudulent one under Section 67, sub. d(6) that deals with the power of a trustee of an adjudicated partnership firm to set aside fraudulent conveyances of firm property. The chattel mortgage in question was not given in consequence of any consideration passing to the partnership concern. The consideration therefor passed directly to a single partner, as distinguished from the concern. The remaining partner and the Bank knew that partnership property was being transferred to effect such loan, which would cause a depletion of a partnership estate. Regardless of actual knowledge, or the good faith with which they may have acted in the premise, the result of the

transaction was to effect a fraudulent transfer of partnership property under Section 67, sub. d(4) (b) of the Bankruptcy Act of 1938, supra, and is subject to being set aside on that ground by the Trustee in Bankruptcy.

Such transfer is not only fraudulent and subject to being set aside under subsection (b) of Section 67, sub. d(4) supra, for the reasons above stated, but under the facts of this case should be set aside as falling within the ban of subsection (a) thereof. Under said subsection (a), the "transfer" of partnership property to a partner, at a time when the partnership is or will thereby be rendered insolvent is a fraudulent one. A "sale * * * direct or indirect", the "disposing of or of parting with property or with an interest therein" is such a "transfer". 11 U.S.C.A. § 1(30). In light of the all-embracing and compendious definition of the term "transfer" contained in Section 1(30) of the Bankruptcy Act of 1938, a sale of one partner's interest in a firm of two partners can now only be regarded as a "transfer" of partnership property. Such a sale terminates the tenancy which the selling partner has in the property of the partnership; it effects a change in the holding of the firm's property; the selling partner "parts" with his interest in the property of the firm, and such being the consequences of the transaction it can only be regarded as a "transfer" within the meaning of the present Bankruptcy Act. A "transfer" so effected is now under bankruptcy law declared to be a fraudulent one, regardless of intent, when the partnership is insolvent or made insolvent, directly or indirectly, thereby. Earlier cases applying a different rule, as delineated in Sargent v. Blake, 8 Cir., 160 F. 57, 17 L.R.A.,N.S., 1040, 15 Ann.Cas. 58; Huiskamp et al. v. Moline Wagon Co., 121 U.S. 310, 7 S.Ct. 899, 30 L.Ed. 971; Hays v. Harris, 8 Cir., 78 F.2d 66, and relied on by the Bank, can no longer be considered controlling authorities under bankruptcy law, to reach an apposite conclusion. Section 67, sub. d(4), supra, was, as we perceive its provisions, enacted to extinguish, to some extent, the inequities which firm creditors were at times caused to suffer in insolvent partnership bankruptcy proceedings, by the general rule of partnership law, confirmed in the above cases. Said section now prohibits partners of a firm, when the firm is insolvent, from converting property of a firm into several property of the partners, and thereby cause firm creditors to lose their right in equity to have firm assets applied to the payment of firm debts and be relegated to having their claims considered along with individual creditors of insolvent partners. Thus, under said section, firm creditors are now assured of some priority in enforcement of their claims against a bankrupt partnership firm, so far as assets of such firm are transferred to a partner, when the firm is insolvent or made insolvent by such transfer.

There is no question in the case at bar as to the insolvency of the co-partnership and the individual partners thereof, at the time of the sale and transfer of Raphael's interest to Francis. While so insolvent, the Bank made the loan to Francis, and he executed the chattel mortgage as security therefor to effect the purchase of Raphael's one-half interest. "Knowledge" of the Bank, or the partners, of the firm's insolvency is not, under the terms of Section 67, sub. d(4) (a), necessary to determine the question of fraudulent transfer here considered. The "fact" of insolvency appears to be all that is necessary to make such transfer fraudulent. The Bank, as did the partners in this case, had actual knowledge of the purpose of the loan, and, as above stated, that partnership property was the security behind the chattel mortgage. That the payment to Raphael was made with borrowed money from the Bank does not make the transaction a valid one. Cf. In re Rubin, 7 Cir., 1 F.2d 157. The form of the transaction by which a transfer is effected is not of governing importance if the essential elements of a fraudulent conveyance are present. 8 C.J.S., Bankruptcy, § 232, p. 822. If the sale of the interest of Raphael to Francis, while their partnership was insolvent, was a fraudulent transfer of partnership property under the law (as we hold it was), then the loan made by the Bank and the chattel mortgage given as security therefor to effect such transfer were integral parts of that transaction. The effect thereof was to cause a

depletion of the assets of the partnership and deprive existing creditors of the firm of their rights to have their claims paid out of partnership property. To avoid the effects of such a transfer of partnership property, we believe was one of the purposes of enactment of Section 67, sub. d(4) into the Bankruptcy Act of 1938. The transaction being a fraudulent one under the law, the knowledge with which the Bank and the partners participated in such transaction permeates the whole plan with fraud, and vitiates the chattel mortgage in question.

Section 67, sub. d(6) of the Bankruptcy Act of 1938, 11 U.S.C.A. § 107, sub. d(6), does not save the claim of the Bank. Said subsection provides:

"A transfer made or an obligation incurred by a debtor adjudged a bankrupt under this title, which is fraudulent under this subdivision d against creditors of such debtor having claims provable under this title, shall be null and void against the trustee, except as to a bona-fide purchaser, lienor, or obligee for a present fair equivalent value: Provided, however, That such purchaser, lienor, or obligee, who without actual fraudulent intent has given a consideration less than fair, as defined in this subdivision d, for such transfer, lien, or obligation, may retain the property, lien, or obligation as security for repayment."

■ The Bank here claims that it is a "bona-fide * * * Lienor, or obligee" and that "without actual fraudulent intent" it passed the consideration for the security of the chattel mortgage in question to Francis Joseph Venie and hence under the proviso of said sub-section "may retain the property, lien, or obligation as security for repayment" of such loan. We do not believe that the Bank can sustain such contention under the facts before us for the following reasons:

The Bank participated with actual knowledge of the purpose of the transaction out of which the chattel mortgage was executed. That transaction is declared fraudulent as a matter of law, because of the mere fact of insolvency of the partnership firm. Awareness of the purpose of a transaction which is declared fraudulent as a matter of law is wholly inconsistent with a claim of good faith. In Re Zerbersky,

D.C., 287 F. 600. To sustain its claim of a right to retain the lien of the chattel mortgage under sub-section (6) supra, the Bank must establish that it is not only a bona-fide lienor, but also that it passed to the partnership firm "fair equivalent value" for the transfer of partnership property. " 'Bona-fide' has been utilized (in said sub-section) in lieu of the adjectival phrase, 'in good faith', found in former Sec. 67e" of the Bankruptcy Act of 1898. " 'Present fair equivalent value' appears in the new saving clause in lieu of 'present fair consideration' found in former Sec. 67e." Collier on Bankr., 14th Ed., Vol. 4, p. 337. Sub-section d(1) (e) of the present Act provides, "consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained." In light of the foregoing, and the fact that no part of the loan advanced by the Bank was passed to the firm, or was used by the partners in liquidation of partnership obligations, can it be said that "fair consideration" was given for the chattel mortgage in question. The property pledged as security for such loan transaction falls within the provisions of Section 67, sub. d(4) (a) supra, and the Bank cannot claim to be a bona-fide lienor for a present fair equivalent value under Section 67, sub. d(6) because no consideration of any sort passed to the partnership by the transaction in question. Where a transferee participates in a transfer of partnership property, at a time when the partnership firm is insolvent and the consideration for such transfer passes to an individual partner, as distinguished from consideration to the partnership firm, he can no more avail himself of the provisions of Section 67, sub. d(6) supra than he could by participating in actual fraud under the Bankruptcy Act of 1898. "It is clear that such a transferee must yield to the Trustee in Bankruptcy if the partnership is insolvent at the time of the transaction, or is ren-

dered insolvent thereby unless the transferee can bring himself within the 'except' clause as a bona-fide transferee for a present fair equivalent value." (Collier on Bankr., supra, p. 348-9). It may well be questioned whether such a transferee can ever so establish himself. This for the reason that "a transfer of firm property in consideration of a benefit accruing to the individual partners will, in practically every instance, amount to a pro tanto diminution of the partnership estate. Courts may thus properly refuse the protection of the proviso to the transferee of firm property, whose consideration ran to an individual partner rather than to the partnership." (Collier on Bankr., supra, p. 348).

To allow the reclamation claim of the Bank under the facts in this case would permit it to escape from gross inequities caused to firm creditors of Sandy Anne Candy by its participation in a "transfer" of assets of that firm which is declared "fraudulent" as a matter of law. Section 67, sub. d(4) is specifically directed at this type of transfers of firm partnership assets. In so cataloging such transfers, it places the emphasis on fraudulent conveyances where it should be placed,—on those who cause, or participate in, the depletion of partnership firm assets. To hold otherwise would be to place a premium on inequity. The Chandler Act was sponsored and enacted to promote equitable distribution of bankrupt estates, not to place premiums on inequities.

The order of the Referee allowing the reclamation claims of the Citizens Bank of Springfield, Missouri, and ordering said claim to be preferentially paid by the Trustee, is reversed. The Referee is directed to enter an order in this summary proceeding setting aside and vacating the lien of the chattel mortgage in question and directing the Trustee in Bankruptcy to hold the proceeds of the sale of the personal property covered by said chattel mortgage as part of the general assets of the partnership estate, adjudicated bankrupt, in this proceeding, to be disposed of according to further orders of the Referee, as provided by law.