In re PRACTICAL INVESTMENT
CORPORATION, Debtor.

PRACTICAL INVESTMENT
CORPORATION, Plaintiff,

v.

Chandler RELLEN, and Second National
Building & Loan, Inc., and Leslie Scott
Auerbach, Esquire, Defendants.

Bankruptcy No. 84–00450–A.
Adv. No. 86–0476–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Feb. 7, 1989.

**936**

Valerie P. Morrison, Gold & Stanley, Alexandria, Va., for debtor.

John P. Hume, Mario Greszes, Jayne Marinelli, Krooth & Altman, Washington, D.C., for Leslie Scott Auerbach.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

We deal here with the avoidability of a fraudulent conveyance between the parties Joseph R. Poole (hereinafter "Poole") and Practical Investment Corporation (hereinafter "PIC"), each of whom are in bankruptcy. The issue presented is whether PIC may retain its lien on real property that Poole conveyed to PIC in a fraudulent transfer as defined in 11 U.S.C. § 548(c).

In July of 1983, Poole met with the president of PIC, Leon Rosenberg, and requested a loan to carry out a real estate syndication. On September 1, 1983, PIC did in fact loan Poole $700,000, and Poole gave PIC deeds to and a deed of trust on several pieces of real estate, including property located at 8405 Atlantic Avenue, Ocean City, Maryland, pursuant to a contract labeled "Basic Agreement" that the parties entered into that day. The parties agreed to place the deeds into escrow for ninety days. PIC did not record the deeds during the escrow period but did record its deed of trust within the 90–day period. PIC asserts that it was its intention to record the deeds of trust on all of the real estate promptly after executing the Basic Agreement. However, it did not record the deed of trust to the Atlantic Avenue property until November 4, 1983. PIC explains the delay as due to difficulty retaining local counsel in Ocean City.

At the end of the ninety-day escrow period, Poole was to repurchase the real estate for $900,000. Poole never repurchased the property. In October, Poole failed to make payment on the loan. The following month, on November 4, PIC recorded the deed of trust on the 8405 Atlantic Avenue property and, on November 9, notified Poole by letter that he was in default. Poole met twice with Rosenberg after receiving the notice of default, in late November and in early December. As a result of these meetings, PIC learned that Poole would not be able to repurchase the real estate as he had planned. Thereafter, on December 9, 1983, PIC recorded the deeds, which had been released from escrow. On March 7, 1984, Poole filed a chapter 7 bankruptcy petition in the District of Maryland.

A short time later, on April 14, 1984, PIC filed a chapter 11 bankruptcy petition in this Court. On February 28, 1985, this Court ordered the properties of the debtor, PIC, sold free and clear of liens. PIC, as debtor-in-possession, sold the property on April 15, 1985, paid several undisclosed secured creditors, and realized only $100,000 as proceeds from the sale. It is the $100,000 that is the subject of this dispute.

The posture of the case is as follows: on September 25, 1986, PIC, as debtor-in-possession, filed a complaint against Chandler Rellan, Leslie Auerbach and the Second National Building & Loan, Inc. in this Court to determine all interests in the proceeds of the sale of the 8405 Atlantic Avenue property. Auerbach, trustee for the bankrupt estate of Joseph Poole, was the only party to file an answer. Later Auer-

bach filed a complaint in the Bankruptcy Court for the District of Maryland to set aside the transfer of the 8405 Atlantic Avenue property as a fraudulent conveyance and as a preference. On October 30, 1986, PIC moved for summary judgment in this Court on the trustee's avoidance complaint, claiming priority to the proceeds of the 8504 Atlantic Avenue sale. Auerbach filed a cross motion for summary judgment incorporating by reference his avoidance complaint.

Following hearings on these motions on March 18, 1987 and March 30, 1987, this Court granted Auerbach's motion in part, ruling that Poole's transfer of the deed and deed of trust were fraudulent conveyances under 11 U.S.C. § 548(a) as set forth in a letter opinion dated April 17, 1987. Left for decision was the issue of whether PIC could retain its lien on the 8405 Atlantic Avenue property pursuant to § 548(c), the Court having ruled this issue could not be disposed of properly upon a motion for summary judgment. This matter came to trial on April 22, 1987. Following the trial, the parties submitted briefs as well as reply briefs.

Let us first turn to an examination of whether PIC can retain its lien on the 8405 Atlantic Avenue property pursuant to Section 548(c), and address the issue of whether the transfer is voidable under sections 544, 545 or 547. Next, we address whether PIC took in good faith and for value, after which we examine the problem the parties refer to as "the battle of the trustees" or the "battle of the strong arms".

PIC argues that it has a valid lien on the proceeds of the sale to the extent of the $700,000 given for the deed of trust. Proffering that Auerbach cannot avoid the transfer under sections 547 or 544, PIC contends it may retain its lien, asserting that it gave value in good faith, at arms-length, without knowledge of any insolvency or fraud on the part of Poole.

Auerbach cannot avoid the transfer under sections 547 or 544, PIC argues, because the transfer is beyond the 90–day preference limitation and PIC is not an insider for the 90–day exception. Further,

PIC contends that even if it were a preference, the transfer was a contemporaneous exchange and falls within the section 547(c) preference exception. Finally, PIC suggests that Auerbach cannot successfully use section 544 to avoid the transfer because under the applicable state law, the Maryland Uniform Fraudulent Conveyance Act, PIC did not have the requisite "actual intent" to hinder or delay creditors.

Auerbach claims that PIC entered into the transfer and took the deed of trust in bad faith because PIC knew or had reason to know that Poole was insolvent at the time of the transfer, that Poole had committed fraud against his creditors, and that adequate consideration would not run to the partnership that owned the properties. Additionally, Auerbach argues that PIC's acceptance of Poole's transfer of essentially all of his assets suggests bad faith of the transferee.

Auerbach asserts further that PIC had sufficient knowledge and contact with Poole to render PIC an insider for the purpose of section 547(b). If the assertion is true, Auerbach could set aside the transfer as a preference and PIC may not retain its lien.

Pursuant to section 548(c), unless the transfer is voidable under sections 544, 545 or 547, a transferee of a fraudulent conveyance may enforce a lien to the extent of the value given provided the transferee takes in good faith. 11 U.S.C. § 548(c). If the transferee's only liability to the trustee is under section 548, and if he takes for value and in good faith, then subsection (c) grants him a lien on the property transferred or other similar protection. S.Rep. No. 989, 95th Cong., 2d Sess. 89 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5875.

Section 544, which is referred to as the "strong arm clause," empowers the trustee with the ability to invalidate certain transfers. *See In re General Coffee Corp.*, 828 F.2d 699, 704 (11th Cir.1987) (trustee has power to avoid secret liens); *In re Cockreham*, 84 B.R. 757, 759–60 (Bankr.D.Wyo. 1988) (trustee given "sweeping powers of avoidance"); *Matter of Feldman*, 54 B.R.

659, 660 (Bankr.D.N.J.1985) (trustee in bankruptcy has power under § 544 to avoid all unexecuted liens on debtor's real property); 4 *Collier on Bankruptcy*, ¶ 544.01, at 544–3 (15th ed. 1988). Section 544(a) provides the trustee with three powers upon which to invalidate a transfer. Each is a derivative power. *See generally In re Great Plains Western Ranch Co.*, 38 B.R. 899, 905 (Bankr.C.D.Cal.1984). The first power the trustee derives is that of a creditor of the debtor who upon a simple contract could have obtained a judicial lien on all property of the debtor. 11 U.S.C. § 544(a)(1); *Commercial Credit Co. v. Davidson*, 112 F.2d 54, 56 (5th Cir.1940) (trustee in bankruptcy had the power of the most favored creditor under state law priorities); *In re Nicholson*, 57 B.R. 672, 674 (Bankr.D.Nev.1986) (under § 544, trustee in bankruptcy has power of holder of valid judicial lien or a returned unsatisfied writ of execution and, thus, under state law, has priority over unperfected statutory liens); 4 *Collier on Bankruptcy* ¶ 544–02 at 544–12 (15th ed. 1988). The second power derives from a creditor with an unsatisfied execution on a judicial lien. 11 U.S.C. § 544(a)(2); *Nicholson*, 57 B.R. at 674; *Feldman*, 54 B.R. at 660. The third power derives from a bona fide purchaser of real property. 11 U.S.C. § 544(a)(3); *In re Great Plains Western*, 38 B.R. at 903–06 (debtor-in-possession could avoid limited partnership's unrecorded interests on real property of the debtor as general partner and record title holder in open possession).

Section 544(b) also grants the trustee certain powers. Under this section, the trustee derives the power from state law to void an unsecured claim. 11 U.S.C. § 544(b). However, section 544(b) contains an express restriction not found in § 544(a). 4 *Collier on Bankruptcy*, ¶ 544.03, at 544–18 (15th ed. 1988). Under section 544(b), the trustee cannot act upon the rights of holders of secured claims. *See id.* at 544–19. That is, section 544(b) only allows the trustee to avoid a transfer if an actual creditor exists with an unsecured allowable claim for credit extended before the transfer was recorded. *See* Analysis of H.R. 8200, H.R.Rep. No. 595, 95th Cong., 1st Sess. 370 (1977), U.S.Code Cong. & Admin.News pp. 5787, 6326; Analysis of S. 2266, S.Rep. No. 989, 95th Cong., 2d Sess. 85 (1978), U.S.Code Cong. & Admin.News p. 6046.

■ Federal bankruptcy law determines the trustee's powers, but state law defines his priority and what he will receive in exercising his power. *Havee v. Belk*, 775 F.2d 1209, 1218 (4th Cir.1985); *Angeles Real Estate Co. v. Kerxton*, 737 F.2d 416, 418 (4th Cir.1984) (applying Maryland law); *Matter of Chaseley's Foods, Inc.*, 726 F.2d 303, 307 (7th Cir.1984). We are thus required to examine the appropriate state law.[1] The Maryland Code provides that a deed or mortgage does not take effect until it is executed and recorded. Md.Real Prop. Code Ann. §§ 3–101, –102 (1988). After recording, a deed "takes effect" and assumes a status in the priority scheme.

Every recorded deed or other instrument takes effect from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date, unless the grantee of the subsequent deed has:

(1) Accepted delivery of the deed or other instrument

(i) In good faith

(ii) Without constructive notice under § 302[2], and

(iii) For a good and valuable consideration and

(2) Recorded the deed first.

---

1. The validity, nature and effect of liens in bankruptcy are governed by the laws of the state in which the property is located. *In re Lewis Energy Corp.*, 36 B.R. 205, 207 (Bankr.D. Colo.1983). The property in question in this matter is located in the state of Maryland. Under the stated rule, the controlling law is Maryland law.

2. Section 3–202 states: "[i]f a grantee under an unrecorded deed is in possession of the land and his possession is inconsistent with the record title, his possession constitutes constructive notice of what an inquiry of the possessor would disclose as to the existence of the unrecorded deed." Md.Real Prop.Code Ann. § 3–202 (1988).

*Id.* at § 3–203. The recording of any instrument constitutes constructive notice from the date of recording. *Id.* at § 3–102.

▮ Under the rules set forth above, the trustee can use section 544(a) to avoid the deed of trust on the 8405 Atlantic Avenue real estate only if as a hypothetical creditor he could purchase the property or otherwise obtain a lien on the property on the date of the bankruptcy petition filing without notice of the PIC deed of trust. Accordingly, we must determine whether the Maryland public notice requirements were satisfied by PIC.

The parties agree that PIC properly recorded its deed of trust on the 8405 Atlantic Avenue property on November 4, 1983. Therefore, a purchaser on March 7, 1984 would have constructive notice of the deed of trust and, under the Maryland real property rules, could not have priority. Accordingly, the trustee for Poole may not rely on section 544(a) to avoid the transfer.

Turning to section 544(b), the trustee may rely on this section to avoid the deed of trust only if an actual creditor exists and has an unsecured claim based on credit extended before Poole filed the bankruptcy petition. We have no such party here.

▮ Let us examine next section 545 which allows a trustee to avoid a statutory lien. 11 U.S.C. § 545; *See In re Davis,* 22 B.R. 523, 525 (Bankr.W.D.Pa.1981) (purpose of § 545 allows trustee to avoid the fixing of statutory liens and was intended to prevent state laws from displacing federal bankruptcy laws). The Code defines a "statutory lien" as a:

> lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute[.]

11 U.S.C. § 101(47); *In re Janssen,* 42 B.R. 294, 296 (Bankr.E.D.Va.1984). A statutory lien is one that arises automatically and is not based on an agreement to give a lien. *Janssen,* 42 B.R. at 296; 10 Am.Jur.2d *Bankruptcy* § 568 (1980); S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5813, 6271.

In this case, trustee Auerbach seeks to avoid the deed of conveyance as well as the deed of trust. The deed of trust does not fall within the liens granted by the Maryland Code; it does not arise "solely by force of a statute[.]" Rather, it arose by agreement of the parties. Hence, it is consensual and not statutory. Therefore, Auerbach cannot use section 545 to avoid the conveyance of land or the transfer of the deed of trust.

Finally, we turn to section 547. If a transfer meets the requirements of section 547(b), a trustee may set it aside as a preference. That is, the trustee must show that a transfer was

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). For our purposes here, we must decide when the "transfer" occurred, that is, whether that date was within ninety days of the filing of the petition and, if not, whether PIC constitutes an insider since the transfer was within at least one year of the petition filing date.

■ "Transfer" means parting with property or an interest in property. S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5813, 6271. A transfer is "made"

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days;

11 U.S.C. § 547(e)(2). However, the Code limits such transfer as "not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3).

Property rights are generally matters of state law. The Code defines when a transfer occurs and what constitutes a transfer, however, we must turn to state law to determine what constitutes "rights in the property transferred." *In re Brass Kettle Restaurant, Inc,* 790 F.2d 574, 575 (7th Cir.1986) (in determining whether debtor's recovery subject to attorney retainer agreement was property of the debtor, bankruptcy court properly looked to state law).

Under the Maryland Uniform Partnership Act, a general partner may convey partnership property. Md.Corps. & Ass'ns. Code Ann. § 9–302 (1985). If the partner did not have the partnership's authority to convey, the partnership may recover the property unless the transferee took for value and without knowledge that the partner, in making the conveyance, had exceeded his authority. *Id.* Under these rules, the transfer of the deed of trust took effect and therefore "was made" the date the deed of trust was recorded provided the debtor had rights in the property subject to the deed of trust.

In the case at hand, title to the property was in the names of the general partners. Each of the general partners signed the deed and the deed of trust. Poole contends that a limited partnership owned the property, yet the deed and land records show only the general partnership as owner. These facts suggest that the partnership approved the encumbrance, and that Poole, as general partner, had rights in the property and the right to transfer it. Thus, Poole's transfer of the deed of trust took effect on November 4, 1983, the date of recordation.

Auerbach argues the transfer was made on the date PIC recorded the deed, or December 9, 1983, because "the Basic Agreement was structured as a sale/buyback transaction." The deed of trust became meaningless, Auerbach contends, the date the deed was recorded because after that date it was a deed of trust securing property which PIC already owned. This argument ignores the fact that this Court determined the transfer of the deed to be a fraudulent conveyance that Auerbach may avoid. Accordingly, the deed of trust is no longer "meaningless" because the deed is a nullity. Thus, the relevant date is the date the deed of trust was recorded and not the date the deed itself was recorded.

November 4, 1983 is not within ninety days of March 7, 1984. Thus, the transfer on November 4, 1983 was not within ninety days of the bankruptcy petition filed on March 7, 1983. Accordingly, Auerbach can only avoid the transfer under section 547(b) if PIC qualifies as an insider.

■ The Code defines "insider" if the debtor [3] is an individual as a

(i) relative of the debtor or of a general partner of the debtor;

(ii) partnership in which the debtor is a general partner;

(iii) general partner of the debtor; or

(iv) corporation of which the debtor is a director, officer, or person in control;

11 U.S.C. § 101(30). An "insider" is one who has a sufficiently close relationship with the debtor such that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor. H.R.Rep. No. 595, 95th Cong., 1st Sess. 312 (1977); S.Rep. No. 989, 95th Cong., 2d Sess.

---

**3.** Although PIC is a debtor, and this Adversary Proceeding arises in the context of its reorganization, Poole, an individual, is "the debtor" for the purposes of the preference determination. It is Poole's trustee, Auerbach, who is trying to avoid the transfer.

25 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5811, 6269; *see In re Taylor*, 29 B.R. 5, 7 (Bankr.W.D.Ky.1983) (buyer who had previous business transactions with debtor including construction of home and a loan, was a classmate and a friend, did not have sufficiently close relationship with debtor to constitute insider). Specifically, the relationship involves considerable control or a high likelihood of control on the part of the creditor deemed to be an insider. *See Gray v. Giant Wholesale Corp.*, 758 F.2d 1000, 1003 (4th Cir.1985) (creditor was not insider or person in control of debtor simply because it controlled dispensation of store's checks); *In re Durkay*, 9 B.R. 58, 61 (N.D.Ohio 1981) (attorney for debtor who represented debtor and debtor's corporation in complex litigation was not insider of debtor). Mere financial power over debtor does not necessarily impute insider status to a lender. *In re Technology for Energy Corp.*, 56 B.R. 307, 316 (Bankr.E.D.Tenn.1985) (lender/bank with financial control over debtor was not insider of corporation even though it knew about corporation's financial setbacks when it made its loan because bank did not control corporation's contract or personnel decisions nor production schedules or purchase order decisions); *Schick Oil & Gas, Inc. v. Federal Deposit Ins. Corp.*, 35 B.R. 282, 285 (Bankr.W.D.Okla.1983) (bank was not an insider of corporation even though corporation received its primary funding from credit that bank extended). Finally, the Bankruptcy Amendments and Federal Judgeship Act of 1984 eliminated the condition that the insider is one who has "reasonable cause to believe the debtor was insolvent" at the time of the transfer. Bankruptcy Amendment and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984); 4 *Collier on Bankruptcy*, ¶ 547.08, at 547–38 n. 6 (15th ed. 1988).

 In the matter at hand, Poole is not an officer, director, general partner, or controlling person of PIC, nor is he related to a person meeting such description. Furthermore, PIC does not have significant control over Poole. In fact, the record reveals that PIC's president met with Poole only on one occasion prior to loaning Poole money. Following the execution of the loan and the transfer of the deed of trust, PIC had some contact with Poole. However, the relevant inquiry here is whether PIC had a special relationship with Poole to the extent that it requires close scrutiny. Since PIC merely had financial power over Poole, was never an officer, director, shareholder, partner or joint venturer with Poole, it appears beyond doubt that the parties did not have a special relationship warranting special scrutiny. As such, PIC cannot be determined to be an insider.

Having determined that PIC is not an insider of Poole, we find that the transfer of the deed of trust is not a preference under section 547(b). Accordingly, we need not determine whether the transaction falls within the section 547(c) exceptions to the section 547(b) preferences.

It is clear that PIC's only liability to trustee Auerbach is under section 548(a). If PIC took the deed of trust for value and in good faith, it may retain its deed of trust to the extent of that value. *See* 11 U.S.C. § 548(c).

 Auerbach claims that PIC lacked good faith when it made the transfer. He suggests that good faith "presupposes not only a lack of knowledge of the fraud but also a lack of knowledge of such facts as would put the reasonably prudent person on inquiry[,]" and cites *Chorost v. Grand Rapids Factory Showrooms, Inc.*, 77 F.Supp. 276, 281 (D.N.J.1948), *aff'd* 172 F.2d 327 (3rd Cir.1949) and *In re Allied Dev. Corp.*, 435 F.2d 372, 375–76 (7th Cir. 1970). Auerbach offers the following facts as evidence that PIC met this standard. First, Poole's default on a lease payment indicates PIC had knowledge of Poole's precarious financial condition. Second, the high risk nature of the transaction itself, including the fact that Poole transferred substantially all of his assets and that PIC temporarily withheld recordation. Third, the disbursement sheet attached to the Basic Agreement did not list the limited partners indicating PIC had knowledge that the partnership did not receive consideration, and finally, PIC was copied on a letter that

described Poole's forgery on a note as "paid and cancelled", thus putting PIC on notice of Poole's fraud on his creditors.

PIC asserts that it had good faith throughout the transaction. In support thereof it cites the fact that it had no knowledge or reason to know Poole was insolvent or attempting to defraud his creditors at the time of the transfer (whether or not that date is the date of the deed recordation or the deed of trust recordation). PIC points to Poole's financial statement for June of that year which showed him as having substantial net worth and equity in his property, and Poole's testimony that he did not reveal his financial difficulties to PIC until after the deed of trust had been recorded. PIC points out also that Poole gave to PIC an opinion letter from his attorney declaring that Poole had the authority, as general partner, to transfer the properties. Thus, PIC asserts that it had no reason to believe that limited partners were not receiving consideration from the transaction, or that the partnership did not authorize the transaction. PIC rejects the argument that placing the deed in escrow and withholding recordation during that period shows bad faith. Finally, PIC does not deny the existence of the letter describing the forgery, but does not admit receiving it.

The Code does not define "good faith" for the purposes of section 548(c). The courts seem to define good faith for the purposes of this section in terms of the transferee's relationship to the fraud involved in the section 548(a) fraudulent conveyance. For example, the court in *In re Candor Diamond Corp.*, 76 B.R. 342, 351 (Bankr.S.D.N.Y.1987) found collusion between the transferor and transferees in carrying out the fraudulent conveyances as inconsistent with the notion of good faith.[4] However, few courts have addressed and defined "good faith" solely for the purpose of section 548(c).

Similarly, the Fourth Circuit has not defined good faith specifically in the context of section 548(c). It has, however, examined good faith in the section 548 realm and suggested certain good faith standards. For example, the Fourth Circuit has determined in *Smith v. Mixon* that a transferee with constructive knowledge of a fraudulent deed of trust may still be a good faith transferee. 788 F.2d 229, 231–32 (4th Cir. 1986). The *Smith* court's concern dealt with section 550 and the trustee's ability to avoid a fraudulent conveyance as against a good faith transferee. Specifically, the debtor recorded a fraudulent deed of trust on real property that he owned, then transferred the property to his father in satisfaction of an antecedent debt, and later released the deed. *Id.* at 230. The Fourth Circuit upheld the bankruptcy court's findings that the deed of trust and its release were fraudulent conveyances and preferential transfers. *Id.* at 231. The trustee could not, however, recover from the father. *Id.* The father was a good faith transferee because he did not have actual knowledge of the fraud and, hence, voidability of the conveyance, even though he did have constructive knowledge. If the father had conducted a title search before accepting the deed, he would have discovered the fraudulent deed of trust. The son released the deed two days after the father acquired the property. *Id.* On these facts the Bankruptcy Court found, and the Fourth Circuit upheld, that the father was a good faith transferee.

In an earlier case, the Fourth Circuit found good faith may still be present even though a transferee of a deed of trust is a personal friend and legal counsel of the debtors, who knew the debtors had several unsecured creditors, and "should have known that the [debtors] were insolvent at the time the deed of trust was given." *Gilmer v. Woodson*, 332 F.2d 541, 547 (4th Cir.1964), *cert. denied*, 379 U.S. 834, 85 S.Ct. 67, 13 L.Ed.2d 42 (1964). In reversing the district court and the bankruptcy court's findings of lack of good faith, the court in *Gilmer v. Woodson* concluded that "good faith cannot be said to be lacking

---

**4.** In this case, the transferee pleaded guilty to the charge that he "unlawfully, wilfully, knowingly and fraudulently transferred and concealed property of a corporation with intent to defeat the provisions" of the bankruptcy. *Candor Diamond,* 76 B.R. at 351.

unless the transferee knowingly participated in the debtor-transferor's purpose to defeat other creditors or lacked good faith in valuing the property exchanged." *Id.* at 547 (citing 4 Remington on Bankruptcy 1654 (1957)). Since the debtors did not intend to defeat other creditors, the transferee could not have participated in such intended purpose. *Id.* In addition, the antecedent debt sought to be secured was less than the value of the security received. *Id.* Hence, the transferee took in good faith. It should be noted that in the *Gilmer* case, the deed executed by the debtors transferred all of their real estate. *Id.* at 543. However, the Court did not consider this in and of itself sufficiently persuasive to prove the transferee's lack of good faith. *See id.* at 545.[5]

In the case at bar, Auerbach relies on cases outside this circuit as support for his contention that PIC lacked good faith. Each case he relies upon is distinguishable from the present case. First, Auerbach relies upon *Chorost v. Grand Rapids Factory Showrooms*, 77 F.Supp. 276 (D.N.J. 1948) to show that a transfer of substantially all of one's assets suggests bad faith of the transferee. The facts in *Chorost* are substantially different than the facts in the matter before us. In *Chorost*, a retail merchant transferred all of his stock, after purchasing it from creditors, to his brother. *See Chorost*, 77 F.Supp. at 278. Both parties were fully aware that the removal of the entire inventory from the one company would hinder and delay that company's creditors. *See id.* at 280. Yet, the brother accepted the transfer of the entire stock of merchandise. *Id.* at 278.

In the present case, Poole granted a security interest in nearly all of his assets to PIC in order to obtain a loan, apparently to be used to repay some creditors as well as to fund a new business venture. PIC never received all of Poole's property, nor was this its expressed intent. PIC simply expected repayment of the loan. Clearly this

is not the "bad faith" expressed in *Chorost* wherein the acceptance of all of one's inventory was part of an agreed scheme to delay creditors.

Next, Auerbach relies on *In re Allied Dev. Corp.*, 435 F.2d 372 (7th Cir.1970) and *In re Venie*, 80 F.Supp. 250 (W.D.Mo.1948), both decided under section 67(d) of the Bankruptcy Act, as support for his argument that a delay in recording a mortgage is evidence of bad faith as well as the fact that knowledge of financial irregularities is evidence of a lack of good faith. The *Allied* court found that the three-week delay in recording a mortgage was proof of a conspiracy to hinder, delay or defraud creditors of Allied. *Allied*, 435 F.2d at 374. However, the court did not find that the failure to record in and of itself established "actual intent" to hinder, delay and defraud creditors. Rather, the failure to record coupled with the testimony of Allied's counsel, after having made a loan to Allied, who admitted that his failure to record his mortgage was part of an agreement to keep from Allied's record any mortgages, liens or judgments did establish an actual intent to hinder, delay or defraud creditors. *Id.* at 375.

The court went on to decide that the two banks which were the assignees of that lien could not retain their lien because they did not take the assignment in good faith. *Id.* at 376. Essential to the ruling was that the banks knew that Allied had initiated a chapter 11 arrangement proceeding with claims already filed therein, were aware of Allied's financial abnormalities, and were aware of the existence of certain check kiting actions as well as state action taken in response to the check kiting. *Id.* at 375–76. In addition, the banks accepted the assignment of the mortgage without a title search, and without any investigation of the facts or circumstances surrounding the issuance of the mortgage. *Id.* at 376. Under these facts, the court ruled that the

---

**5.** Auerbach argues in this case that transferring all or substantially all of one's assets to a single transferee is evidence of a lack of that transferee's good faith. However, the cases that support this point are in the context of a commer-

cial debtor transferring all or substantially all of its inventory and other assets for less than adequate consideration immediately prior to bankruptcy.

banks did not accept the assignment in good faith and could not retain their lien. *Id.* at 377.

In *Venie*, the court found that the creditor, a bank, lacked good faith when it made a loan to the debtor partner with knowledge that no consideration would extend to the partnership. *Venie*, 80 F.Supp. at 256. The court noted that the bank had done business with the partnership consisting of two brothers for two years and that during the course of the transaction, the debtor, one of the brothers, told the bank he needed the money to purchase his brother's interest in the partnership. *See id.* at 252. The court found on these facts that the bank "knew or should have known" that the debtor was acting as a liquidating partner and that the loan would render the partnership insolvent. *Id.* at 253–54.

■ The facts before us as shown by the evidence in the instant case differ extensively from those in the above cases. First, the delays in recording the deed of trust and the deeds themselves were not part of plan to mislead or defraud creditors. Secondly, at the time of recording the deed of trust, PIC had no knowledge of any illegal behavior on behalf of Poole, nor of any bankruptcy proceedings by Poole.[6] Finally, PIC relied upon a title search, an appraisal and an opinion letter from Poole's attorney all indicating that the transaction was sound.

Specifically, the record reflects that Poole and PIC executed the Basic Agreement on September 1, 1983. The disbursement sheet lists several creditors as being paid from the proceeds of the loan. At the time of the agreement, Poole provided PIC with a financial statement showing his net worth to be $2,081,350 and his real property worth $1,421,800, and with an opinion letter from his attorney stating that Poole had the authority to transfer the proper-

ties. Furthermore, the deed to the properties listed only Poole, his wife and a Mr. Usery, all general partners, as title holders. All of these individuals signed the deed and the deed of trust. PIC obtained a title report and appraisals on the property prior to executing the Basic Agreement. The title report showed the first and second trusts of the Second National Bank with all other liens as released prior to the execution of the Basic Agreement.

In October 1983, Poole defaulted on the obligation. The monthly report showed Poole had been current on all other payments except the one October default.

However, also in October, a Mr. Chandler Rellan, another creditor of Poole's, through his attorney, Mr. Henry Keegan, described in a letter Poole's forgery of Rellan's signature and the words "paid and cancelled" on Poole's promissory note. Keegan sent the letter on October 26, 1983 to Mr. John Cassidy, the escrow attorney, with a copy to PIC. Mr. Keegan testified that he mailed the letter, but he does not know whether PIC received it. The mere fact that Keegan copied the letter to PIC is not evidence that PIC received the letter and had actual knowledge of Poole's fraud on his creditors.

The above facts establish that PIC demonstrated good faith at the time it recorded its deed of trust. PIC did not have actual knowledge of Poole's fraud in the transaction, thus PIC did not knowingly participate in Poole's purpose to defeat his creditors. In addition, PIC did not lack good faith in valuing the properties subject to the deed of trust, but relied upon a title report, an appraisal, an opinion letter and Poole's financial statement. Furthermore, PIC was not aware that a limited partnership owned the property or that less than adequate consideration would extend to the partnership from the transaction. PIC

---

**6.** A transferee's knowledge that a transferor is having financial difficulties is not in and of itself evidence of bad faith. In *Atlanta Shipping Corp., Inc. v. Chemical Bank,* 818 F.2d 240, 249 (2d Cir.1987), the court found that the bank did not have bad faith when it made a loan to the debtor even though the bank knew the debtor was in financial difficulty. Two facts persuaded

the court. First, the debtor informed the bank he would use the loan to repay other creditors. *See id.* Next, the debtor's balance sheet indicated the mortgage to the bank would not render the debtor insolvent. *See id.* On these facts, the court found the bank to have acted in good faith. *Id.*

properly relied upon the deed, the title records, and an attorney opinion letter all of which suggest that a general partnership owned the property. Also, PIC was not aware of any insolvency or of any other creditors of Poole until after the November 4 recordation date. Finally, even assuming PIC knew Poole was having financial difficulty, the fact that it loaned Poole money is not evidence of bad faith where PIC believed that its loan would be used to pay off what appeared to be Poole's only creditors. Accordingly, we find on these facts that PIC had good faith at the time it recorded its deed of trust.

Next, we consider the application of the "strong-arm clause." The question PIC has raised is the resulting effect when a trustee has the authority to avoid a transfer but the property that is the subject of the transfer is held in the bankrupt estate of the transferee.

Auerbach explains the strong arm avoidance process as voiding the title ("ownership") in the hands of the transferee and returning title ("ownership") to the transferor and, accordingly, pursuant to section 541, to his trustee in bankruptcy. PIC claims that a trustee cannot void title in the hands of the transferee. Instead, the transferee retains title, and the trustee of the fraudulent debtor/transferor's estate has merely a lien on the property in the hands of the transferee. PIC asserts that this lien granted to the trustee is authorized by the Bankruptcy Code's fraudulent conveyance provisions, and therefore the trustee has a "statutory lien." The transferee may then avoid this "statutory lien" if it is not perfected prior to the transferee's filing of bankruptcy. On this basis, PIC asserts that Auerbach merely has a lien on the proceeds of the fraudulent 8405 Atlantic Avenue sale, and that Auerbach did not perfect such lien prior to PIC's filing of bankruptcy and therefore PIC, as debtor-in-possession, may avoid the lien.

Generally, section 550 governs the trustee's avoidance power. This section states that a trustee "may recover ... from ... the ... transferee" the avoided property. 11 U.S.C. § 550. In addition, § 551 pro-

vides that an avoided transfer "is preserved for the benefit of the estate[,]" which the legislative history explains is "automatically preserved[.]" 11 U.S.C. § 551; S.Rep. No. 989, 95th Cong. 2d Sess. 91 (1978); H.R.Rep. No. 595, 95th Cong. 1st Sess. 376 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5877, 6332. The Fourth Circuit explained the power in *In re Morris Communications, Inc.*

> Section 548(a) provides that a trustee in Bankruptcy can avoid a fraudulent transfer of property of the debtor. Section 550(a) provides that the Court may order that the property transferred, or its value, be returned to the trustee.... Based on the language of Section 550(a), this Court finds a legislative intent to return the property transferred unless to do so would be inequitable.... The clear legislative intent of these sections [548 and 550] is that the fraudulently transferred property and all its proceeds and profits therefrom should be returned to the trustee subject only to certain liens in favor of a good faith transferee.

*Morris*, 75 B.R. 619, 629 (Bankr.W.D.N.C. 1987). This Court has explained that when a trustee avoids a fraudulent deed executed by the debtor, the

> effect ... [is] to restore title to the bankrupt, bring the property back into the estate, and by operation of law pursuant to 70(a) of the Bankruptcy Act, vest said title in the Trustee in Bankruptcy.

*In re Claxton*, 32 B.R. 215, 219 (Bankr.E. D.Va.1983); *accord In re Herman Cantor Corp.*, 15 B.R. 747, 750 (Bankr.E.D.Va. 1981). However, the Bankruptcy Code has eliminated the vesting of title in the trustee. *See* 11 U.S.C. § 541. However, the court in *In re Figearo* held that although the trustee may not have title, the trustee may void title in a transferee.

> The transferee merely held voidable title to the transferred property. *See* 11 U.S. C. § 548(c). The successful exercise of the trustee's avoidance power causes the affected transfer to become void, allowing the trustee to recover the property under 11 U.S.C. § 550.

*In re Figearo,* 79 B.R. 914, 918 (Bankr.D. Nev.1987). The *Figearo* court went on to hold that the creditor's "security interest does not attach to the trustee's right to set aside a fraudulent transfer, but does attach to the recovered property." *Id.*

Accordingly, the better rule appears to be that Auerbach is entitled to the proceeds in the hands of PIC. Because the transfer of the deed of bargain and sale was a fraudulent conveyance under section 548(a), trustee Auerbach may avoid ownership in PIC and collect the proceeds for the benefit of the estate pursuant to section 550. However, PIC's lien is valid as PIC did in fact take the lien in good faith. Any balance due on the lien must be paid over to PIC.

Auerbach does not have a "lien" on the proceeds in the hands of PIC as debtor-in-possession. PIC's characterization of Auerbach's power as a "lien" that is unperfected, assumes Auerbach has some sort of security interest. However, Auerbach has no security interest in the proceeds; Auerbach as trustee stands in the shoes of the debtor. He succeeds only to the debtor's interest in property, and since the debtor has no security interest in the proceeds, none can pass to the trustee.

Even assuming Auerbach's power is a lien or indeed a security interest, it is clearly not a "statutory lien" as defined by the Bankruptcy Code. If we were to accept PIC's argument, then Article 9 security interests or real estate mortgages would be "statutory liens" since they are governed by statute. Yet the language of the Code and the legislative intent behind Bankruptcy Code Section 101(47) excludes these liens from its definition of statutory lien. Thus, PIC's argument fails.

Having determined that PIC had good faith at the time it recorded the deed of trust, and having determined the trustee's avoidance powers, we hold that Auerbach may recover for the benefit of the estate of Joseph Poole the proceeds of the 8405 Atlantic Avenue property sale. However, Auerbach must honor PIC's lien on the proceeds to the extent of the value PIC received for the lien.

An appropriate Order will enter.